[Civ. No. 24383. Second Dist., Div. One. Sept. 8, 1960.]

PATRICIA De ROSIER, Respondent, v. RICHARD D. CROW et al., Appellants.

DeForrest Home and Albert Hampton for Appellants.

Robert G. Clinnin and John G. Thorpe for Respondent.

WOOD, P. J.—Action for damages for personal injuries resulting from assault and battery allegedly committed by an employee of a bowling alley and liquor bar. Defendants Mr. and Mrs. Crow were the owners of the alley and bar; and defendant Laurine Schaal, a sister of Mrs. Crow, was the alleged employee. In a nonjury trial, judgment was for plaintiff for $5,000. Mr. and Mrs. Crow (the owners) appeal from the judgment.

Appellants contend that the evidence does not support the findings: (1) that the assault and battery arose out of and occurred in the scope and course of Laurine's employment; and (2) that appellants knew or should have known that Laurine had a propensity to be violent when drinking intoxicating liquor.

The alleged assault and battery occurred on September 19, 1956, about 12:30 a.m., in a bedroom adjoining the bar.

On September 18, 1956, about 6:15 p.m., plaintiff and her husband, a fireman, went to the bowling alley to bowl with a firemen's bowling league. Plaintiff bowled until approximately 9:30 p.m., and soon thereafter she went into the barroom. Plaintiff's husband came into the barroom about 10:30 p.m.

A part of plaintiff's testimony was as follows: After her husband came into the barroom they sat at the bar. Laurine came into the barroom and requested plaintiff to go with her to the restroom. On the way to the restroom they went into the bedroom (which was between the barroom and restroom), and while they were in the bedroom Laurine started to talk about her troubles. Laurine said, among other things, that she was in love with Mr. Crow. Plaintiff tried to get away, but Laurine grabbed her arm, and said, ''I could break your arm.'' Each time plaintiff tried to get away, Laurine pulled her and prevented her from leaving. Mrs. Crow came into the room, and Laurine told plaintiff to ''Tell her I insulted you or something,'' and to tell her ''Anything to get rid of her.'' Plaintiff told Mrs. Crow that Laurine had insulted her. Mrs. Crow said, ''Laurine you have no business drinking liquor. You are a sick girl.'' Mrs. Crow left the bedroom, and then plaintiff returned to the barroom. Laurine remained in the bedroom. Thereafter Laurine returned to the barroom and talked to plaintiff's husband who was playing juke box records. Plaintiff sat at the bar and talked to Mr. Crow who was tending the bar.

There was other evidence as follows: About midnight plaintiff became ill and went out of the building to a place near

the outside door of the bedroom. About 20 minutes thereafter, Mr. Crow went out of the building and noticed that plaintiff was lying on the ground. He knelt beside her and held her head. Laurine came to the outside door of the bedroom, and Mr. Crow asked her to "go get" Mrs. Crow. While Laurine was in the doorway, plaintiff's husband and Mr. Parkinson, a fireman, came to the doorway. Plaintiff's husband went to the place where Mr. Crow was kneeling and struck him. Laurine screamed, and said, "Leave my brother-in-law (Crow) alone." Then she went outside and tried to attack plaintiff and her husband. Parkinson held Laurine. Plaintiff and her husband went into the bedroom. Parkinson and Laurine returned to the bedroom, and Laurine said to plaintiff: "I'll get you. You won't get away with it." Plaintiff's husband started out the rear door of the bedroom. At that time Mr. Crow came to the rear or outside door of the bedroom, and then he and plaintiff's husband and Parkinson argued, while they were near the doorway. While they were arguing, Laurine (who had been sitting on the bed) jumped up, ran over to the place where plaintiff was standing and violently twisted plaintiff's arm, and threw her to the floor. Plaintiff's husband "put a headlock" on Laurine, and then Laurine released plaintiff's arm. While plaintiff's husband was holding Laurine, Mr. Crow started toward him. At that time someone struck Mr. Crow and as a result thereof he was unconscious. Then plaintiff and her husband left the bowling alley and bar.

Mr. Parkinson, a witness called by plaintiff, testified that the man who struck Mr. Crow came into the bedroom from the bar and returned to the bar immediately after he struck Mr. Crow; he (witness) did not know the man; after the altercation, and while he (witness), Mr. Crow, and Laurine were in the bedroom, Mrs. Crow came into the room; he "didn't think she knew exactly what happened all around, the whole story on that"; she said to Laurine: "Mother will be sick when she hears about it. You are always doing like this. We are sick of it. Get out and stay out." He testified further that at the time of the attack Mrs. Crow was the only one who was sober; Laurine was "completely intoxicated"; and plaintiff was "not completely sober."

In 1952 (approximately four years prior to the attack), Laurine received treatment for alcoholism in a private sanitarium. In December, 1953 (approximately three years prior to the attack), she was committed to Camarillo State Hospital as a mentally ill person. Between March, 1954, and August,

1955, she had been released from the hospital "on leave" on several occasions. On May 30, 1956 (approximately three and a half months prior to the attack), she had been released from the hospital as a "normal person." She went to the bowling alley and bar about the last of August, 1956 (approximately three weeks prior to the attack), and lived in the bedroom above referred to. She left the place about the last of September, 1956 (approximately two weeks after the altercation). On October 4, 1956 (approximately three weeks after the altercation), she was recommitted to the hospital. On March 27, 1957, she was discharged from the hospital.

Laurine was not present at the trial. In her deposition, she said that on the several occasions when she had been released from the hospital (prior to the attack) she would "feel herself slipping again," and she would start drinking, and then would return to the hospital.

The court found: That at the time of the attack, Laurine was an employee of the Crows, and the attack arose out of and occurred in the course and scope of her employment. That Laurine did not act in defense of herself or in defense of Mr. Crow. Plaintiff's injuries were not the result of a private quarrel between plaintiff and Laurine. At the time of the attack, Laurine was not an incompetent person. She was an alcoholic and had a propensity to be violent when drinking intoxicating liquor. Mr. and Mrs. Crow knew and (or), in the exercise of reasonable care, should have known of that propensity. On the evening of the attack, Mr. and Mrs. Crow served alcoholic drinks to Laurine, and Laurine was intoxicated. They knew that she was intoxicated, and they were negligent in permitting her to mingle with the patrons and in failing to take care to protect plaintiff from Laurine although they had the opportunity and the ability to do so.

As above stated, one of the contentions of appellants is that the evidence does not support the finding that the assault arose out of and occurred in the scope and course of Laurine's employment. Appellants testified that Laurine was not employed by them. On appeal they state that although the evidence on the issue of employment was highly conflicting, there is sufficient evidence to support the finding that Laurine was employed as a cocktail waitress serving customers at the bowling alley until midnight. They also state that the finding that Laurine "did not go to the defense" of Mr. Crow is supported by the evidence for the reason that plaintiff did not attack Mr. Crow. They argue that the only reasonable infer-

ence which the evidence supports, other than an inference of "defense of person," is that the attack arose out of animosity of Laurine toward plaintiff as a result of attentions directed by plaintiff toward Mr. Crow, and that under such circumstances the attack did not arise out of or occur in the scope and course of Laurine's employment. They also argue that the evidence introduced by plaintiff shows that Laurine was not on duty at the time of the attack (*i.e.*, was not on duty after midnight).

Plaintiff testified that during the evening, and preceding the attack, Laurine served drinks to bowlers at the bowling alley; that a week previous to the attack, plaintiff was at the bowling alley and on that occasion Laurine served drinks to the bowlers.

Plaintiff's husband testified that there was a red light which bowlers used for the purpose of calling a waitress; that when a bowler wanted a drink he would press a button which would turn on a light, and then a waitress would come, turn off the light, and take the order; Laurine was "carrying out that function" during the evening and preceding the attack; a week previous to the attack, he was at the alley and on that occasion she served drinks to the bowlers.

Mrs. McMenamin, a witness called by plaintiff, testified that she was at the bowling alley during the evening of the attack; she observed Laurine serving drinks there; during the evening Mrs. Crow asked her (witness) if she would make a hamburger for a customer "because Laurine had passed out in the back room," and that Laurine "was unable to do this job, to make the hamburger."

Mr. Crow testified that Laurine lived on the premises from approximately the first of September until approximately the last week of September; during that time she took drinks "toward the alley"; on the evening of the attack, she got one drink at the bar about 8 o'clock and another drink about 8:30 o'clock; he did not know whether or not they were for her.

The trial court could reasonably infer from the evidence that Laurine was employed by appellants on the date of the attack.

In *Haworth* v. *Elliott*, 67 Cal.App.2d 77 [153 P.2d 804], an owner of a barroom was sued for damages for injuries received by a patron who was forcibly ejected from the barroom by the bartenders. ▮ In that case it was said, at page 81: "In order to establish the liability of the employer for injuries inflicted by his employees it is sufficient to prove merely that

excessive force was applied and that the servant was acting within the general scope of his employment. [Citation.] It is statutory that a principal is responsible for the wrongful acts committed by his agent when done as a part of the transaction of the business of the agency (Civ. Code, § 2338). . . . His [proprietor's] responsibility for wrongful acts of his agents is to be determined from the nature of the tort and from the 'activity of the agent on behalf of the principal in connection with which the act was committed.' The question is not whether the wrongful act itself was authorized but whether it was committed in the course of a series of acts of the agent which were authorized by the principal. [Citation.] It is sufficient proof of Elliott's [the proprietor's] liability that the bartenders were acting in his behalf at the time they ejected Haworth [plaintiff] from the barroom.''

In the present case, as above stated, there was evidence that Laurine was employed by appellants as a waitress at the time of the attack. She was in the establishment, and patrons were there. She testified, regarding the attack, that: ''They were fighting. Whether or not she [plaintiff] was trying to help her husband or what, I don't know. All I know is they were in after Rick [Mr. Crow] and all I wanted to do was stop the fight and I pulled her away.'' As above stated, there was evidence to the effect that, a short time before the attack, plaintiff's husband struck Mr. Crow, and that Laurine tried to attack plaintiff and her husband. Immediately after plaintiff and her husband, and Parkinson and Laurine, had returned to the bedroom, and after Parkinson had released Laurine, the attack was made. Laurine was intoxicated at that time. The court could reasonably infer that Laurine, by reason of her intoxication, believed that a fight was in progress. She testified that she was attempting to stop the fight. The question as to whether Laurine was acting as a result of personal animosity or was acting in the scope and course of her employment at the time of the attack was a question of fact. Under the circumstances here, it cannot be said as a matter of law that she was not acting within the scope and course of her employment at the time of the attack. The evidence was sufficient to support the finding that the attack arose out of and occurred in the scope and course of Laurine's employment.

Also, the evidence was sufficient to support the finding that appellants knew or should have known that Laurine had

a propensity to be violent when she was drinking intoxicating liquor.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied October 5, 1960, and appellants' petition for a hearing by the Supreme Court was denied October 26, 1960.