BRADLEY *v.* STEVENS.

1. MASTER AND SERVANT—RESPONDEAT SUPERIOR—INTENTIONAL TORTS OF EMPLOYEE.

There is no liability on part of an employer, under the doctrine of *respondeat superior,* for torts intentionally or recklessly committed by an employee beyond the scope of the employer's business.

2. SAME—INTENTIONAL TORT—KNOWLEDGE OF EMPLOYER OF EMPLOYEE'S CRIMINAL RECORD.

An employer who knew or should have known of his employee's propensities and criminal record before commission of an intentional tort by employee upon customer who came to employer's place of business would be liable for damages to such customer.

3. SAME—KNOWLEDGE OF EMPLOYEE'S CRIMINAL RECORD—EVIDENCE.

Evidence *held,* insufficient to establish that defendant employer knew of employee's criminal record as to common-law rape although he was aware of his family troubles and charge of nonsupport of wife and children, hence employer may not be held liable for tort committed upon plaintiff wife when she left car at defendant's garage and was attacked by employee.

4. SAME—LIABILITY FOR EMPLOYEE'S INTENTIONAL TORT—KNOWLEDGE OF EMPLOYER OF CRIMINAL RECORD.

Fact that employee with a criminal record returned to work late in the evening with the consent of the employer's agent

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 35 Am Jur, Master and Servant, §§ 543, 552, 573.
[2–4] 35 Am Jur, Master and Servant, §§ 560, 561, 574, 575.
[2–4] Liability of employer for personal assault by employee upon customer, patron, or other invitee.  40 ALR 1212; 114 ALR 1033.
[2–4] Liability of master for assault committed on woman by servant.  6 ALR 1007.

then in charge would not impose liability upon the employer for tort committed upon a customer by such returning employee, in the absence of showing the employer knew or should have known of the employee's criminal propensities.

Appeal from Wayne; Pugsley (Earl C.), J., presiding. Submitted January 2, 1951. (Docket Nos. 2, 3, Calendar Nos. 44,911, 44,912.) Decided March 1, 1951.

Separate actions of case by Elizabeth E. Bradley and Henry J. Bradley against Gerald J. Stevens, individually and doing business as Stevens Auto Service, for damages arising out of assault by one of defendant's employees. Judgment for defendant. Plaintiffs appeal. Affirmed.

*Frederick B. Darden* (*John J. Sloan,* of counsel), for plaintiffs.

*Cary & BeGole,* for defendant.

BUSHNELL, J. Elizabeth E. Bradley sought damages for personal injuries sustained in a service station operated by defendant Gerald J. Stevens, doing business as Stevens Auto Service. Her husband, Henry J. Bradley, sought damages for the loss which he suffered because of his wife's injuries and for his expenses in connection therewith. These separate causes of action were consolidated and tried before the court without a jury.

On August 21, 1946, Mrs. Bradley, while on her way to visit her husband, who was then in a hospital, stopped at Stevens' place of business to procure gasoline for her automobile. She inquired about the possibility of repairing her brakes which had been giving her trouble. On her return from the hospital she experienced more brake trouble and

stopped at the same service station at about 9 p. m. Two employees were then on duty, one of whom, later ascertained to be Melvin Yeo, examined the car. He quoted a price of $13.50; and upon his assurance that the work could be completed before closing time, Mrs. Bradley instructed him to proceed. He apparently purposely delayed the work, though continually promising Mrs. Bradley that it would be completed in another 10 or 15 minutes. About 10 p. m. the other attendant, Harold Sutton, who was then in charge, handed Yeo some keys, and left Mrs. Bradley and Yeo alone.

It is unnecessary to relate the sordid details of the subsequent occurrences, except to say that Yeo, after continuous improper advances, attacked Mrs. Bradley. When she resisted, he drew a knife and threatened to kill her. Her entreaties, outcries and attempts to escape were futile. She was finally able to break a window with a truck fuel pump. While attempting to crawl through the broken window, she was grabbed by Yeo. She suffered severe cuts on her head and body to such an extent that it was later necessary to remove her right eye. As Mrs. Bradley was struggling to escape through the broken window her screams attracted the attention of a driver of a passing car. He took her to Providence hospital.

The police were called and, after talking to Mrs. Bradley, went to the gasoline station, where they found Yeo sitting in a chair bleeding from wounds on his neck. His explanation was that hold-up men had cut him.

The officers sent for Stevens and talked to him. Officer Doran was asked at the trial:

"Do you remember anything that was said by Mr. Stevens that night?

He replied:

"Yes; he seemed to—rather upset when Yeo got in trouble over the same kind of a case. After I explained what had happened there that evening, he said he was already out on bond. He not only said he was out on bond, but he said he already had a case pending against him of that sort."

The other police officer, Henry Reczko, testified in part as follows:

"*Q*. You heard Mr. Doran's testimony?
"*A*. Yes I did.
"*Q*. Did you hear anything about—Do you remember anything being said about the nature of the offense on which Yeo was out on bail?
"*A*. Not that day.
"*Q*. You don't remember that?
"*A*. I didn't hear anything on that day on the offense that he was out on bail but he merely says, 'Something like this would happen again, and he is out on bail now.' Well, leaving the hospital, this Mrs. Bradley told us he tried to attack her, and that is what my partner told Mr. Stevens, it did happen. That is what it must have been.
"*Mr. Cary:* I ask that be stricken, what must have been, putting 2 and 2 together and saying that is what it must have been.
"*The Court:* What do you mean, must have been?
"*A*. Well, Mr. Stevens asked Patrolman Doran what happened. Patrolman Doran told Stevens Yeo tried to attack a girl in the gas station. That is when he made the statement, he said, 'I thought something like that would happen. Mr. Yeo is out on bail now.'
"*The Court:* Did he say what he had done?
"*A*. Mr. Stevens didn't say anything but that was the remark he made after my partner talked to him.
"*The Court:* He didn't say why he was on bail?
"*A*. No, he didn't say why.
"*The Court:* And you didn't know?"

In 1943, Yeo was arrested for impersonating an officer. That case was dismissed. That same year he was found guilty of nonsupport and placed on 6 months' probation. A subsequent nonsupport charge in 1946 was withdrawn on August 2d of that year. When Yeo attacked Mrs. Bradley, he was then out on bail awaiting trial under a charge of common-law rape. On October 30, 1946, a jury found him not guilty of that charge. For the attack on Mrs. Bradley he was sentenced to serve a term of 5 to 10 years.

Plaintiffs called defendant Gerald J. Stevens for cross-examination under the statute. CL 1948, § 617.66 (Stat Ann § 27.915). He stated that he returned to his gasoline station at 2:15 a. m. in response to a call from Yeo's sister and was informed by the police officers that Yeo had cut his throat after he had attempted to rape a woman. He stated that all he could remember saying to the officers was that Yeo had been locked up 10 or 12 days previously for the nonsupport of his wife, and added:

"That is all I was referring to. And I said, 'To think that something like this would have to happen after his attorney pleading with me not to fire him.'"

He denied that he told the officers that he was "afraid something like this would happen," although he might have said:

"I was afraid to think that this had already happened. What I meant to say was it is terrible that it happened; to think that I could have—that this man here, I was going to let him go out of my employ."

Frank H. Finney, who was attorney for Yeo in the nonsupport and rape cases, testified in part as follows:

"*Q.* Did you at any time ask him (Stevens) directly or otherwise to continue this man in his employ, or anything of that kind?

"*A.* Yes, I did. Mr. Stevens was quite upset, due to the fact that this Melvin had not appeared for work on the day of his arraignment on the nonsupport charge. My conversation with him in regard to that, I believe, was the day or so after that, sometime between July 19th and July 23d. Mr. Stevens took the attitude that he didn't wish to keep Yeo in his employ because he hadn't shown up for work, and he said something about not being able to depend on the man, and I told him that a matter of this kind could happen to most anyone if there had been family trouble, and I told him that there had been a divorce action started at one time, and that my concern was to see that part of Yeo's wages were assigned to his wife, in order that she would have the means of supporting herself and those children, and Mr. Stevens agreed to keep him employed and to acknowledge the validity of the assignment of wages. That is the assignment that I gave to his wife. That completes all I know about my conversations or arrangements with Mr. Stevens in connection with Mr. Yeo. I defended this man in court, and he was acquitted on the first charge."

Stevens was interrogated in detail with respect to his employment of Yeo and the operation of his business. At the conclusion of his testimony the trial judge also interrogated Stevens at length.

In the written opinion filed in the trial court this testimony is summarized. It appears that Yeo had been in Stevens' employ for about 2 months and on the date of the attack concluded his work about 5 p. m., and left the premises. Later Stevens left, and did not know of Yeo's return until he talked with the police officers.

There is no question but that the assault was unprovoked and that Mrs. Bradley was innocent of any conduct which would have led to such a result.

After directing attention to the impossibility of computing with mathematical accuracy the damages suffered by Mrs. Bradley, the trial judge stated that in his opinion they were not less than $15,000. The expenses incurred by her husband totaled $2,381.85. The court held that if Bradley was entitled to recover at all, this was a fair and modest appraisal of his damages.

A review of the record requires concurrence with the following conclusions reached by the trial judge. He said in part:

"If Stevens is held liable, it is on the principle of law quoted, that he is guilty of negligence because of his failure to investigate and learn the character and reputation of Yeo. The burden of proof is upon the plaintiff to establish such negligence by a fair preponderance of the evidence. There is no proof of such negligence except as the same may be inferred from the statements of the officers and those who talked with Stevens the night this affair occurred. In the light of the confusion that then existed, and all the other facts, I am not satisfied that Stevens knew or had any reason to believe, when he employed Yeo, or at any time during his employment, that Yeo had any criminal record other than those matters which referred to his family troubles, and the alleged claim of nonsupport."

Under the doctrine of *respondeat superior* there is no liability on the part of an employer for torts intentionally or recklessly committed by an employee beyond the scope of his master's business. *Martin* v. *Jones,* 302 Mich 355, 358.

If Stevens knew, or should have known, Yeo's propensities and criminal record, the judgment of no cause of action should be vacated. For annotation

of authorities on this subject see 40 ALR, beginning at page 1215, and 114 ALR, beginning at page 1041. See, also, intimation of this view in *Davidson* v. *Chinese Republic Restaurant Co.,* 201 Mich 389 (LRA1918E 704).

This is not a situation involving a question of believing one set of witnesses and not believing another.

The question is: Did Stevens know about the prior crime charged against Yeo, or was he, in his statement to the police officers, referring to the charge of nonsupport? In this appeal from a judgment of no cause of action based upon the trial judge's conclusion that it was the latter, we cannot say that the the evidence clearly preponderates in the opposite direction. *Brackins* v. *Olympia, Inc.,* 316 Mich 275, 283 (168 ALR 890). The record shows that Stevens took the reasonable and usual steps before employing Yeo.

It is also argued by appellants that Stevens cannot escape liability for an act of an employee who, although off duty, returned to the premises and resumed work with the consent of the employer's agent then in charge. This would not impose liability upon Stevens unless he knew or should have known Yeo's criminal propensities.

Under the facts and circumstances as disclosed in this record the law does not impose liability upon defendant Stevens.

The judgment is affirmed, with costs to appellee.

REID, C. J., and BOYLES, NORTH, DETHMERS, BUTZEL, CARR, and SHARPE, JJ., concurred.