LOWERY v DEPARTMENT OF CORRECTIONS

Docket No. 81776. Submitted June 17, 1985, at Lansing.—Decided October 8, 1985. Leave to appeal applied for.

Plaintiff, Raymond Lowery, brought an action in the Court of Claims against the State of Michigan, the Department of Corrections, the department's director, Perry Johnson, and certain unknown guards and inmates at the State Prison of Southern Michigan. Plaintiff sought to recover for personal injuries allegedly inflicted in a series of assaults by the unknown guards and inmates while plaintiff was incarcerated at the prison. Plaintiff's complaint set forth eight causes of action: (1) intentional infliction of injury, (2) negligence, (3) maintenance of a defective condition in a public building, (4) breach of contract, (5) fraud, (6) violation of civil rights under 42 USC 1983 and the federal and Michigan Constitutions, (7) conspiracy to deprive plaintiff of his constitutional rights under 42 USC 1985(3), and (8) knowingly failing to prevent such conspiracy in violation of 42 USC 1986. The Court of Claims, James T. Kallman, J., granted defendants a summary judgment on all counts of plaintiff's complaint. The court held that it was without jurisdiction to hear plaintiff's constitutional claims and

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] Am Jur 2d, Courts §§ 106, 152.

[3, 4] Am Jur 2d, Civil Rights §§ 268, 269.
See the annotations in the ALR3d/4th Quick Index under Discrimination.

[5] Am Jur 2d, Muncipal, School, and State Tort Liability § 88.
Modern status of rule excusing governmental unit from tort liability on theory that only general, not particular, duty was owed under circumstances. 3 ALR4th 1194.

[6, 7] Am Jur 2d, Torts §§ 17 et seq.
Prima facie tort. 16 ALR3d 1191.

[8] Am Jur 2d, Penal and Correctional Institutions §§ 17 et seq.
Liability of prison authorities for injury to prisoner directly caused by assault by other prisoner. 41 ALR3d 1021.

[9] Am Jur 2d, Restitution and Implied Contracts §§ 159 et seq.

[10] Am Jur 2d, Fraud and Deceit §§ 423 et seq.
See the annotations in the ALR3d/4th Quick Index under Fraud and Deceit.

[11] Am Jur 2d, Pleading §§ 306 et seq.

that it did not believe the state constituted a "person" within the meaning of 42 USC 1983. The court found that plaintiff's remaining claims were barred by the doctrine of governmental immunity or that plaintiff had failed to adequately plead a cause of action. The court also held that plaintiff's claim for intentional infliction of injury was not barred by the statute of limitations. Plaintiff appeals from the order granting summary judgment on all counts in his complaint, except as to the negligence count. Defendants cross-appeal alleging that all of plaintiff's claims are barred by the statute of limitations. *Held:*

1. The Court of Claims was vested with subject-matter jurisdiction over plaintiff's constitutionally-based civil rights claims.

2. Perry Johnson is a "state officer". However, the unknown inmates and guards are not "state officers". The Court of Claims had jurisdiction over the suit against Perry Johnson, but not over the claims alleged against the unknown inmates and guards.

3. The Court of Claims erred in holding that it was divested of jurisdiction by operation of MCL 600.6440, because plaintiff's remedy in federal court against the State of Michigan, the Department of Corrections and Perry Johnson is inadequate.

4. A state may be held liable as a "person" under 42 USC 1983. 42 USC 1983 did not abrogate state sovereign immunity. Michigan has not waived its immunity, therefore, plaintiff failed to state a cognizable claim against the state and the Department of Corrections.

5. Plaintiff has not stated a claim against Perry Johnson under 42 USC 1983.

6. The state defendants cannot be held vicariously liable for the actions of the unknown guards and inmates.

7. Plaintiff's claim that the state defendants can be held directly liable for an intentional tort, based on their alleged intentional failure to transfer plaintiff to a different unit within the prison, was deemed clearly unenforceable.

8. Plaintiff failed to state a claim under the public building exception to governmental immunity.

9. Plaintiff did not successfully state a claim based on implied contract and promissory estoppel theories.

10. Plaintiff failed to state a claim for fraud.

11. The onus was not on the trial court to extend plaintiff an opportunity to amend his complaint before the summary judgment was granted.

Affirmed.

1. COURTS — COURT OF CLAIMS — JURISDICTION — STATE OFFICERS.
    The jurisdiction of the Court of Claims is exclusive and extends to

all claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the state and any of its departments, commissions, boards, institutions, arms, or agencies; the Court of Claims generally does not have jurisdiction over suits against individuals, however, jurisdiction does extend to suits against state officers where the acts complained of were performed in an officer's official capacity (MCL 600.6419[1]; MSA 27A.6419[1]).

2. Courts — Court of Claims — Jurisdiction — State Officers.

The primary focus in determining whether an individual qualifies as a state officer, for purposes of determining whether the Court of Claims has jurisdiction over a suit brought against the individual, is on the degree of discretion and independence associated with the position (MCL 600.6419[1]; MSA 27A.6419[1]).

3. Civil Rights — States — Governmental Immunity.

A state is a "person" under the federal civil rights statute which creates a cause of action for a violation of federal civil rights by any person; however, the federal statute which created a cause of action for the deprivation of civil rights by any person did not abrogate state sovereign immunity; Michigan has not waived its immunity and is, therefore, immune from suit under the statute (42 USC 1983).

4. Governmental Immunity — Qualified Immunity — Public Officials — Civil Rights.

Public officials have qualified immunity in an action brought under the federal statute which created a cause of action for the deprivation of civil rights by any person where the complaint does not allege a causative act or omission by the official or that the official acted in bad faith (42 USC 1983).

5. Torts — *Respondeat Superior* — Governmental Agencies — Vicarious Liability — Intentional Torts.

*Respondeat superior* liability generally can be imposed against a governmental agency only where the individial tortfeasor acted during the course of his or her employment and within the scope of his or her authority; a governmental agency cannot be held vicariously liable if either of these conditions is not met; an employee is generally not viewed as acting within the scope of his authority while committing an intentional tort.

6. Torts — Pleading — Negligence.

The mere characterization of an act as "intentional" does not

transfer simple negligence into an intentional tort for purposes of pleading a cause of action.

7. TORTS — INTENTIONAL TORTS.

An intentional tort must be based on an act of commission, as opposed to an act of omission.

8. GOVERNMENTAL IMMUNITY — PRISONS AND PRISONERS — PUBLIC BUILDINGS EXCEPTION TO GOVERNMENTAL IMMUNITY.

A prison constitutes a public building for purposes of applying the public building exception to governmental immunity; the exception is generally limited to allegations of a dangerous building by way of improper design, faulty construction or the absence of safety devices and does not extend to allegations of a failure to provide protection from, or adequate supervision of, other inmates, a failure to provide adequate staff and medical care, or a failure to properly classify an inmate plaintiff and/or remove him from the general prison population (MCL 691.1406; MSA 3.996[106]).

9. PLEADING — IMPLIED CONTRACTS — PROMISSORY ESTOPPEL.

A plaintiff fails to state a claim based on an implied contract theory where he does not plead facts sufficient to satisfy the elements of mutual assent and consideration; a claim based on a promissory estoppel theory fails where it does not allege reliance on any promise made by the defendant.

.10. PLEADING — FRAUD — COURT RULES.

Averments of fraud must be stated with particularity (GCR 1963, 112.2; MCR 2.112[B]).

11. PLEADING — AMENDMENTS TO PLEADING — SUMMARY JUDGMENT — ISSUE OF MATERIAL FACT — COURT RULES.

Each party to an action is to be provided with an opportunity to amend his or her complaint in accord with the court rule pertaining thereto where a motion for summary judgment is brought based on the assertion that there is no genuine issue of material fact (GCR 1963, 117.3, 118; MCR 2.116[I][5], 2.118).

*Terrence H. Bloomquist,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *David G. Edick,* Assistant Attorney General, for defendants.

Before: ALLEN, P.J., and WAHLS and J. P. O'BRIEN,* JJ.

PER CURIAM. Plaintiff sued defendants in the Court of Claims to recover for personal injuries allegedly inflicted in a series of assaults by unknown guards and inmates while plaintiff was incarcerated at the State Prison of Southern Michigan. His first amended complaint set forth the following eight causes of action: (1) intentional infliction of injury; (2) negligence; (3) maintenance of a defective condition in a public building; (4) breach of contract; (5) fraud; (6) violation of civil rights under 42 USC 1983 and the federal and Michigan Constitutions; (7) conspiracy to deprive plaintiff of his constitutional rights under 42 USC 1985(3); and (8) knowingly failing to prevent the conspiracy alleged in count (7), in violation of 42 USC 1986. The Court of Claims held that it was without jurisdiction to hear plaintiff's constitutional claims and that plaintiff's remedy, if any, was in federal court. Further, the court stated that it did not believe that the state constituted a "person" within the meaning of 42 USC 1983. With respect to the remaining claims, the lower court found that they were barred by the doctrine of governmental immunity or that plaintiff had failed to adequately plead a cause of action. The court further held that plaintiff's claim for intentional infliction of injury was not barred by the statute of limitations.[1] Plaintiff appeals as of right

---

* Recorder's court judge, sitting on the Court of Appeals by assignment.

[1] By cross-appeal, defendants apparently maintain that all of plaintiff's claims, and not just count I, are barred by the statute of limitations to the extent that these claims arise out of assaults predating April 1982. The complaint was filed on April 24, 1984. Defendants argue that the two year period of limitation for assault and battery in MCL 600.5805(2); MSA 27A.5805(2) governs, as opposed

from the Court of Claims' order granting summary judgment to defendants. Plaintiff does not appeal from the finding in regard to negligence.

# I

## Court of Claims Jurisdiction.

Defendants averred that the Court of Claims was devoid of subject-matter jurisdiction over constitutional claims and actions against individuals. Although the lower court made no disposition regarding claims against individuals, it found that it was without jurisdiction over constitutional claims, believing that they could not be categorized as either ex contractu or ex delicto.

The jurisdiction of the Court of Claims is exclusive and extends to "all claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the state and any of its departments, commissions, boards, institutions, arms, or agencies". MCL 600.6419(1); MSA 27A.6419(1). Defendants maintain the "ex delicto" should be narrowly construed so as to encompass only traditional common-law torts. We do not believe that the meaning of ex delicto was intended to be so restricted.

Black's Law Dictionary (4th ed), p 660 defines "ex delicto" as "[f]rom a delict, tort, fault, crime, or malfeasance". "Delict" has a broader meaning than "tort" and is defined as "[a] wrong or injury;

to the three year period of limitation for personal injury claims found in MCL 600.5805(8); MSA 27A.5805(8). In contrast, the lower court held that the three-year period of limitation found in the Court of Claims Act applied, MCL 600.6452(1); MSA 27A.6452(1), and that by virtue of his incarceration plaintiff was entitled under MCL 600.5851(1); MSA 27A.5851(1) to an additional year to file his claims. Defendants maintain that this tolling provision was erroneously applied as a tacking provision. Given our disposition of plaintiff's claims on alternative grounds, we do not reach the statute of limitations issue and express no opinion with regard to its merits.

an offense, a violation of public or private duty". *Id.* p 514. "Ex delicto" describes one of two great classes into which all civil and common-law causes of action can be divided. The other class, ex contractu, pertains to civil actions arising out of contract. In contrast, ex delicto claims "are such as grow out of or are founded upon a wrong or tort". *Id.* p 660.

Constitutional claims arising out of violations of civil rights have been regarded as a "species of tort liability". *Carey v Piphus,* 435 US 247, 253; 98 S Ct 1042; 55 L Ed 2d 252 (1978). Moreover, such claims have been compared to personal injury actions for purposes of determining the applicable statute of limitations. *Wilson v Garcia,* 471 US —; 105 S Ct 1938; 85 L Ed 2d 254 (1985). Since ex delicto claims encompass wrongs against persons which are not restricted soley to traditional torts, and, in any event, civil rights actions are in the nature of torts and can be regarded as delicts, we believe that the Court of Claims was vested with subject-matter jurisdiction over plaintiff's constitutionally-based civil rights claims.

Generally, the Court of Claims does not have jurisdiction over suits against individuals. MCL 600.6419(1); MSA 27A.6419(1). However, jurisdiction does extend to suits against state officers where the acts complained of were performed in an officer's official capacity. *Abbott v Secretary of State,* 67 Mich App 344; 240 NW2d 800 (1976); *Grunow v Sanders,* 84 Mich App 578; 269 NW2d 683 (1978); *Burnett v Moore,* 111 Mich App 646; 314 NW2d 458 (1981); *Hamilton v Reynolds,* 129 Mich App 375; 341 NW2d 152 (1983). In determining whether an individual qualifies as a "state officer", the "primary focus [is] on the degree of discretion and independence associated with the position". *Hamilton, supra,* p 379, citing *People v*

*Freedland,* 308 Mich 449, 456-457; 14 NW2d 62 (1944). Clearly, defendant Perry Johnson is a "state officer", as the complaint states a claim against him only in his official capacity as the Director of the Michigan Department of Corrections. However, the unknown inmates certainly do not qualify as "state officers". Moreover, we do not believe that the unknown guards were "state officers", given their limited degree of discretion and independence. Accordingly, the Court of Claims had jurisdiction over the suit against Perry Johnson, but not over claims alleged against James and John Doe.

The Court of Claims was in error when it held that it was divested of jurisdiction by MCL 600.6440; MSA 27A.6440. This provision bars an action in the Court of Claims if the claimant has an adequate remedy in federal court. The Eleventh Amendment to the United States Constitution "bars suits [for monetary damages] against an unconsenting state in federal court not only when the state is the named party, but also when it is the party in fact". *Gordon v Sadasivan,* 144 Mich App 113, 118; 373 NW2d 258 (1985), citing *Scheuer v Rhodes,* 416 US 232; 94 S Ct 1683; 40 L Ed 2d 90 (1974). The Court of Claims Act is not to be construed as a consent to a suit by a private citizen against the state. *Brown Brothers Equipment Co v Michigan,* 266 F Supp 506 (WD Mich, 1967). Moreover, we have found no authority to indicate that this state has consented to suits in federal court which are founded upon 42 USC 1983. Since defendants State of Michigan, Department of Corrections and Perry Johnson could raise the Eleventh Amendment as a defense to this action in federal court, plaintiff's remedy in federal court is inadequate. Therefore, § 6440 did not divest the Court of Claims of jurisdiction.

## II

### *State Amenability to Suit Under § 1983.*

In 42 USC 1983, Congress provided:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of an State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

Presently, there is a conflict in this Court, paralleling a conflict evident in courts throughout the nation, relative to whether a "state" constitutes a "person" under 42 USC 1983.[2] This split of authority is in large part based on divergent interpretations of *Monell v Dep't of Social Services of the City of New York,* 436 US 658; 98 S Ct 2018; 56 L Ed 2d 611 (1978), and *Quern v Jordan,* 440 US 332; 99 S Ct 1139; 59 L Ed 2d 358 (1979).[3]

---

[2] Although unclear, the lower court apparently held that the state did not constitute a person under 42 USC 1985(3) and 1986, as well as 42 USC 1983. We do not purport to address whether a state is a person under §§ 1985(3) or 1986, since it is manifestly clear that plaintiff has failed to state a cognizable claim under either of these provisions. Plaintiff made no allegation of an invidiously discriminatory class-based animus, which is a necessary element to a claim under § 1985(3). See *Griffin v Breckenridge,* 403 US 88, 101; 91 S Ct 1790; 29 L Ed 2d 338 (1971); *Fallis v Toastmasters International, Inc,* 467 F2d 1389 (CA 5, 1972). In the absence of a properly pled § 1985(3) claim, there can be no claim for relief under § 1986. See *Veres v Monroe County,* 364 F Supp 1327 (ED Mich, 1973), *aff'd* 542 F2d 1177 (CA 6, 1976), *cert den* 431 US 969 (1977).

[3] Some courts have based their holdings on alternative grounds. In *Aubuchon v Missouri,* 631 F2d 581 (CA 8, 1980), *cert den* 450 US 915;

In *Monell, supra,* the Supreme Court explicitly overruled *Monroe v Pape,* 365 US 167; 81 S Ct 473; 5 L Ed 2d 492 (1961), to hold that "Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies". 436 US 690. (Emphasis in original.) However, the Court indicated that its holding was "of course, limited to local government units which are not considered part of the State for Eleventh Amendment purposes". *Id.,* fn 54. Nonetheless, some courts have held that states are persons based on *Monell,* believing that it would be inconsistent to regard municipalities and states as different under § 1983. See *e.g., Atchison v Nelson,* 460 F Supp 1102 (D Wyo, 1978); *cf., Morrow v Sudler,* 502 F Supp 1200 (D Colo, 1980). Conversely, other courts have held that states are not persons within the meaning of § 1983, based on the fact that *Monell* restricted its holding to municipalities. See *Taylor v Mitzel,* 82 Cal App 3d 665; 147 Cal Rptr 323 (1978), cited in *DeVargas v State ex rel New Mexico Dep't of Corrections,* 97

101 S Ct 1358; 67 L Ed 2d 341 (1981), the court found that a state was not a person since § 1983 was aimed at individuals and not individual states. See also *Seltzer v Ashcroft,* 675 F2d 184 (CA 8, 1982), *cert den* 104 S Ct 185 (1983); *St Louis County, Missouri v City of Town & Country,* 590 F Supp 731 (ED Mo, 1984); *Shaw v St Louis,* 664 SW2d 572 (Mo App, 1983), *cert den* 105 S Ct 165 (1984). Other courts have either directly or indirectly relied on cases predating *Monell, supra,* and/or on *Monroe v Pape,* 365 US 167; 81 S Ct 473; 5 L Ed 2d 492 (1961), which determined that municipalities were not persons, but which was overruled by *Monell.* See *Hambley v State,* 459 So 2d 408 (Fla App, 1984); *Thomas v New York Temporary State Comm on Regulation of Lobbying,* 83 AD2d 723; 442 NYS2d 632 (1981), *aff'd* 56 NY2d 656; 451 NYS2d 708; 436 NE2d 1310 (1982); *Stanislaus Food Products Co v Public Utilities Comm,* 560 F Supp 114 (ND Cal, 1982). Although other courts have determined that a state is not a person, the analyses are insufficient to determine the basis for these holdings. See *Laje v R E Thomason General Hospital,* 665 F2d 724 (CA 5, 1982); *Richards v New York State Dep't of Correctional Services,* 572 F Supp 1168 (SD NY, 1983); *Wrenn v Kansas,* 561 F Supp 1216 (D Kan, 1983); *Holbrook v Tennessee Dep't of Employment Security,* 602 F Supp 507 (MD Tenn, 1984).

NM 447; 640 P2d 1327 (1981); *Clark v Michigan,* 498 F Supp 159 (ED Mich, 1980).

In *Quern, supra,* the Court held that in enacting § 1983 Congress did not intend to abrogate the sovereign immunity of the states guaranteed by the Eleventh Amendment. In a related prior case, the Court had held that under § 1983 "a federal court's remedial power, consistent with the Eleventh Amendment [was] necessarily limited to prospective injunctive relief * * * and [could] not include a retroactive award which [would require] the payment of funds from the state treasury". *Edelman v Jordan,* 415 US 651, 677; 94 S Ct 1347; 39 L Ed 2d 662, *reh den* 416 US 1000 (1974). In *Quern,* the Court reaffirmed its holding in *Edelman,* indicating that prospective relief could be afforded against state officials under § 1983. Moreover, the Court upheld a decision requiring the state to send out notices to a plaintiff class, finding that the notices would not infringe on the Eleventh Amendment.

In a concurring opinion in *Quern,* Justice Brennan characterized the majority's holding as a determination "that a State is not a 'person' [under § 1983]", 440 US 350, a holding with which he did not agree. Although the majority opinion did not expressly refute this characterization, it engaged in a debate with Justice Brennan which has generated confusion regarding the scope of the majority's holding.

Numerous courts have agreed with Justice Brennan's conclusion that the majority effectively held that a state was not a person. See *Hampton v Michigan,* 144 Mich App 794; 377 NW2d 920 (1985); *Merritt v State,* 108 Idaho 20; 696 P2d 871 (1985); *State v Green,* 633 P2d 1381 (Alas, 1981); *Boldt v State,* 101 Wis 2d 566; 305 NW2d 133, *cert den* 454 US 973; 102 S Ct 524; 70 L Ed 2d 393 (1981); *Edgar*

v *State,* 92 Wash 2d 217; 595 P2d 534 (1979), *cert den* 444 US 1077; 100 S Ct 1026; 62 L Ed 2d 760 (1980). These cases appear to mesh the § 1983 and Eleventh Amendment inquiries, *i.e.,* they conclude that based on *Quern,* Congress did not intend to encroach upon the states' sovereign immunity and, thus, states were not intended to be designated as persons under § 1983. See *Ruiz v Estelle,* 679 F2d 1115 (CA 5, 1982), *cert den* 460 US 1042 (1983). The reasoning in these cases appears consistent with *Monell, supra,* which determined that municipalities were persons based on the fact that Congress intended that municipalities be subject to § 1983 liability. In other words, *Monell* did not employ a bifurcated analysis with respect to personhood and immunity.

Other courts have made no explicit finding regarding whether a state is a person, but have held that § 1983 claims against states in state courts are barred based on the doctrine of sovereign immunity. See *Fetterman v University of Connecticut,* 192 Conn 539; 473 A2d 1176 (1984); *Thiboutot v Maine,* 405 A2d 230 (1979), *aff'd on other grounds* 448 US 1; 100 S Ct 2502; 65 L Ed 2d 555 (1980).

Yet, other cases have determined that Justice Rehnquist, who wrote for the majority in *Quern,* determined only that the Eleventh Amendment had not been abrogated by § 1983, while avoiding a determination relative to whether a state is a person. These cases have gone on to determine that a state is a person under § 1983. See *Smith v Michigan,* 122 Mich App 340; 333 NW2d 50 (1983), *lv gtd* 422 Mich 971 (1985); 363 NW2d 641 (1984), cited in *Williams v Michigan,* 144 Mich App 438; 376 NW2d 117 (1985); *Karchefske v Dep't of Mental Health,* 143 Mich App 1; 371

NW2d 876 (1985);[4] *Hodges v Tomberlin,* 510 F Supp 1280 (SD Ga, 1980); *Gumbhir v Kansas State Board of Pharmacy,* 231 Kan 507; 646 P2d 1078 (1982), *cert den* 459 US 1103 (1983); *Marrapese v Rhode Island,* 500 F Supp 1207 (D RI, 1980); *Irwin v Calhoun,* 522 F Supp 576 (D Mass, 1981).

Although we believe that there are compelling arguments on both sides of this issue, we hold that a state is a "person" under 42 USC 1983. We find that the latter group of cases, holding that a state is a "person" under 42 USC 1983, presents a more well-reasoned analysis for the following reasons. First, *Quern, supra,* and *Edelman, supra,* indicated that prospective injunctive relief could be afforded in federal courts against states pursuant to § 1983. As the court noted in *Hodges, supra,* p 1283:

"[I]t is obvious that, if any relief at all may be afforded under § 1983 against a state, it must be a 'person' within the meaning of the statute for at least some purposes."

Second, we do not believe that the *Quern* majority implicitly decided that a state was a person as Justice Brennan suggested. Rather, in accord with *Smith, supra,* and *Karchefske, supra,* we believe that the holding was limited to a determination that § 1983 did not nullify the sovereign immunity of the states secured by the Eleventh Amendment. The Eleventh Amendment bars a suit against a state in federal court only if the state has not waived its immunity. *Hans v Louisiana,* 134 US 1; 10 S Ct 504; 33 L Ed 842 (1890); *Alabama v Pugh,*

---

[4] Based on *Will v Dep't of Civil Service,* 145 Mich App 214; 377 NW2d 826 (1985), *lv gtd* 422 Mich 971 (1985), which held that a state was not a person under § 1983, this Court issued a certification of conflict order to the Michigan Supreme Court in accord with Administrative Order No. 1984-2, 418 Mich lxxxii.

438 US 781; 98 S Ct 3057; 57 L Ed 2d 1114 (1978).
As the Court noted in *Karchefske,* states are free
to abrogate their own immunity to actions based
on § 1983 even if Congress did not do so when
enacting § 1983. See *Pennhurst State School &
Hospital v Halderman,* — US —; 104 S Ct 900; 79
L Ed 2d 67 (1984). Yet, such a result would be
precluded if states were found not to be persons
within the meaning of § 1983.

After concluding that a state was a person un-
der § 1983, the *Karchefske* panel held that § 1983
actions against the state and state agencies were
nonetheless barred in state courts. This holding
was based, in part, on *Quern, supra,* which found
that there was no abrogation of Eleventh Amend-
ment immunity since there was only scant evi-
dence of a Congressional intent to the contrary.
*Quern* indicated that if Congress had intended to
abrogate such a well-established right it would
have done so in a more express fashion. In *Kar-
chefske,* p 9, the Court stated that it "would expect
the same clarity of Congressional intent to abro-
gate traditional sovereign immunity as the United
States Supreme Court demanded (and found lack-
ing) in *Quern, supra,* with respect to Eleventh
Amendment immunity". As the State of Michi-
gan's waiver of sovereign immunity applies only in
narrow situations, see MCL 691.1407; MSA
3.996(107) *Ross, supra, Karchefske* concluded that
the state had not made itself amenable to suit
under 42 USC 1983. Since we do not believe that
Congress intended to abrogate a state's sovereign
immunity against its will by permitting the insti-
tution of § 1983 actions in state courts, while
barring their institution in federal forums, we
adopt the reasoning of the *Karchefske* opinion.
Accordingly, we hold that plaintiff has failed to

state a cognizable claim against the state and the Department of Corrections.[5]

Further, we do not believe that plaintiff has stated a claim against defendant Johnson under § 1983. Plaintiff has sued defendant Johnson only in his official capacity. He has not alleged a causative act or omission by this defendant which resulted in his injuries. See *Clark, supra.* Moreover, there are no allegations in the complaint that defendant Johnson acted in bad faith. Thus, as a public official, he is entitled to qualified immunity. *Baker v Detroit,* 458 F Supp 379 (ED Mich, 1978), *aff'd on other grounds sub nom Bratton v Detroit,* 704 F2d 878 (CA 6, 1983), *cert den* 104 S Ct 703, *reh den* 104 S Ct 1431 (1984).

## III

### *Plaintiff's State Law Claims.*

In *Ross,* 420 Mich 624, the Supreme Court stated:

"*Respondeat superior* liability generally can be imposed [against a governmental agency] only where the individual tortfeasor acted during the course of his or her employment and within the scope of his or her authority. If either of these conditions is not met, a governmental agency cannot be held vicariously liable." (Footnote omitted.)

We note that *Ross, supra,* imposed some addi-

[5] Although in his complaint plaintiff premised his civil rights claim on violations of various provisions in the Michigan Constitution and the United States Constitution, as well as § 1983, he has not raised any argument in regard to these alternative provisions in his brief on appeal. Further, plaintiff has not alleged in his complaint that defendants are vicariously liable under § 1983 for the actions of the unknown guards and inmates. Accordingly, we express no opinion on these issues.

tional caveats on the *respondeat superior* liability of the state. However, with respect to count I of plaintiff's complaint, entitled "Intentional Infliction of Injury", we find that the foregoing test is dispositive. Citing *Hinds v Dep't of Corrections,* 126 Mich App 99; 337 NW2d 1 (1982), *lv den* 422 Mich 901 (1985), the lower court held that the state defendants could not be held vicariously liable for the actions of the unknown guards and inmates; the alleged assaults clearly constituted illegal actions and, thus, the guards or inmates could not be viewed as agents or servants of the state. We concur with the trial court's holding and find that this result is compelled by *Ross, supra.* Since, generally, an employee cannot be viewed as acting within the scope of his authority while committing an intentional tort, see *Borsuk v Wheeler,* 133 Mich App 403; 349 NW2d 522 (1984), *Ross* indicates that vicarious liability will not attach for the assaults inflicted by the guards. In addition, we can see no basis for imposing vicarious liability on the state for the actions of inmates.

Plaintiff also maintains that the state defendants can be held directly liable for an intentional tort, based on their alleged intentional failure to transfer plaintiff to a different unit within the prison. However, the mere characterization of an act as "intentional" does not transform simple negligence into an intentional tort. *Elliott v Dep't of Social Services,* 124 Mich App 124; 333 NW2d 603 (1983); *Hobrla v Glass,* 143 Mich App 616; 372 NW2d 630 (1985). Moreover, this Court has held that an intentional tort must be based on an act of commission, as opposed to an act of omission. *Hobrla; Williams, supra.* Accordingly, we believe that this claim is so clearly unenforceable as a matter of law that no factual development could

provide a basis for recovery. *Abel v Eli Lilly & Co,* 418 Mich 311; 343 NW2d 164 (1984).

We also hold that plaintiff has failed to state a claim under the public building exception to governmental immunity. See MCL 691.1406; MSA 3.996(106). Although a prison constitutes a public building, *Green v Dep't of Corrections,* 386 Mich 459; 192 NW2d 491 (1971), the exception is generally limited to allegations of a "dangerous building by way of improper design, faulty construction or the absence of safety devices". *Hinds,* p 101, citing *Pichette v Manistique Public Schools,* 403 Mich 268; 269 NW2d 143 (1978); *Lockaby v Wayne County,* 406 Mich 65; 276 NW2d 1 (1979); *Bush v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979). The exception does not extend to allegations of (1) a failure to provide protection from, or adequate supervision of, other inmates, (2) a failure to provide adequate staff and medical care, or (3) a failure to properly classify plaintiff and/or remove him from the general prison population. See *Hinds, supra.* These allegations sound in negligence and do not constitute allegations of danger caused by the building itself. See *Vargo v Svitchan,* 100 Mich App 809; 301 NW2d 1 (1980), *app dis* 411 Mich 1035 (1982). Based on these allegations, plaintiff has failed to plead in avoidance of governmental immunity. With respect to allegations regarding the lack of a padded cell and an inadequate physical structure, it is clear that plaintiff's injuries did not arise from such alleged defects, but from the assaults allegedly inflicted by unknown guards and inmates. Accordingly, we believe that summary judgment was properly granted on this claim.

Plaintiff maintains that he successfully stated a claim based on implied contract and promissory estoppel theories. In his complaint, he alleges that

defendants agreed to provide him with a safe living environment, that this "agreement" was enforceable, and that defendants breached the agreement. However, a contract based on implication must still satisfy the elements of mutual assent and consideration, *Spruytte v Dep't of Corrections,* 82 Mich App 145; 266 NW2d 482 (1978). In *Spruytte,* the Court found that no implied bailment contract could be found to exist because (1) there was no mutual assent since the procedure for bailment of property upon incarceration was required as an aspect of prison management and control, and (2) there could be no finding of consideration since defendant was performing a preexisting duty. In the instant case, plaintiff did not assent to the provision of a safe living environment by prison authorities. He was sentenced to prison against his will and was thereby forced to accept the conditions provided. Although he may have been entitled to a safe environment, an entitlement is not the equivalent of an agreement. Moreover, we do not believe that there was any consideration for this alleged contract since defendants had a preexisting duty to provide a safe environment. In addition, plaintiff failed to plead a claim for promissory estoppel, since the complaint does not allege that he relied on any promise made by defendant. See Restatement Contracts, 2d, § 84, comment (b), p 218.

Plaintiff alleges that defendant knowingly failed to disclose the limitations of the protective custody unit where he was housed. These allegations do not constitute a properly pled cause of action for fraud. Averments of fraud must be stated with particularity. GCR 1963, 112.2; MCR 2.112(B). Plaintiff has not alleged that defendants intended to induce him to rely on this nondisclosure. See *Fassihi v Sommers, Schwartz, Silver, Schwartz &*

*Tyler, PC,* 107 Mich App 509; 309 NW2d 645 (1981). Moreover, plaintiff has failed to allege that defendants had an affirmative duty to disclose these facts, an element which is essential to a claim of silent fraud. See *Lumber Village, Inc v Siegler,* 135 Mich App 685; 355 NW2d 654 (1984). Therefore, plaintiff has failed to state a claim for relief.

Finally, plaintiff maintains that he was entitled to amend his complaint so as to state a claim before summary judgment was entered. This argument is based solely on GCR 1963, 117.3 [now MCR 2.116(I)(5)] which provides each party with an opportunity to amend his or her complaint in accord with GCR 1963, 118 [now MCR 2.118] where a motion for summary judgment is based on the assertion that there is no genuine issue of material fact. Plaintiff was not entitled to the benefit of this rule since defendants' motion was brought pursuant to GCR 1963, 117.2(1) [now MCR 2.116(C)(8)] for failure to state a claim. In any event, plaintiff obtained the benefit of Rule 118 since he amended his complaint once as of right. Although he could have moved for leave to amend thereafter, or requested a stipulation from defendants allowing such an action, plaintiff took no such initiative. The onus was not on the trial court to extend plaintiff an opportunity to amend before summary judgment was granted.

Affirmed.