**Darrin HILL, by Elizabeth HILL, his conservator, and Elizabeth Hill, Individually, Plaintiffs,**

v.

**James MITCHELL, Richard Walczak, and City of Detroit, Department of Police, Defendants.**

**Civ. A. No. 85–CV–75662–DT.**

United States District Court, E.D. Michigan, S.D.

Nov. 13, 1986.

Harvey Chayet, Southfield, Mich., for plaintiffs.

Glen R. Warn (Mitchell), John P. Quinn (City of Detroit), Walter S. Nussbaum (Mitchell), S. Allen Early, III (Walczak), Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JULIAN ABELE COOK, Jr., District Judge.

This is a Motion for Reconsideration by Defendant, City of Detroit, of a decision by this Court on October 3, 1986, which grant-

ed, in part, and denied, in part, a similar motion by Plaintiff. On October 30, 1986, this Court entered an Order that enumerated the bases for its decision of October 3, 1986. Because Rule 17(k) of the Local Rules of the Eastern District of Michigan does not expressly prohibit a second motion for reconsideration and because the current motion raises new and substantial issues, this Court will address its merits.

## I.

A brief discussion of the facts will be useful. Plaintiff alleges that at approximately 4:15 p.m. on March 23, 1985, he was walking with some friends near 24th Street in Detroit. According to the Complaint, Defendants, Mitchell and Walczak, Detroit police officers, called to Hill and his companions by using vile names, including racial epithets. Plaintiff asserts that Defendants, after throwing rocks, began to chase them. The Complaint goes on to state:

> That subsequent thereto, Defendant Mitchell did then and there pull a handgun from his person, aiming said handgun at Plaintiff, Darrin Hill, and did then and there shoot Plaintiff, Darrin Hill.

Complaint at ¶ 9. Defendant contests various factual assertions in the Complaint.[1] However, because the City of Detroit's Motion to Dismiss is at issue, this Court is bound to accept all of the Plaintiff's well pleaded factual allegations as true. *See e.g. United States v. State of Mississippi*, 380 U.S. 128, 143, 85 S.Ct. 808, 816, 13 L.Ed.2d 717 (1965).

Plaintiff brought suit against both officers, as well as the City of Detroit. Plaintiff alleged that the City should be held liable under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, as well as under state law tort. On July 10, 1986, this Court granted the City's Motion to Dismiss. However, upon Plaintiff's Motion for Reconsideration, this

Court reinstated the state tort claim against the City on October 3, 1986.

In partially granting the original Motion for Reconsideration, this Court determined that it had incorrectly held that governmental immunity barred Plaintiff's claim of vicarious liability against the City of Detroit. In *Ross v. Consumers Power*, 420 Mich. 567, 592, 363 N.W.2d 641 (1984), the Michigan Supreme Court stated that in order to avoid governmental immunity, a Plaintiff must show that Defendant (1) was an "officer, employee, or agent, acting during the course of his employment and within the scope of his authority," and (2) committed "a tort while engaged in an activity which is non-governmental ..." In granting reinstatement of the tort claim, this Court held that, for the purposes of the dismissal motion, the activity of the officer should have been viewed as non-governmental because Plaintiff's repeated assertions (to wit, that no valid arrest occurred) had to be taken as true.[2] This meant that the officer had committed an *ultra vires* intentional tort, which could not be labeled a governmental function. Thus, Plaintiff, in the judgment of this Court, had met the two requirements for avoiding a governmental immunity defense. *See* Order at 2–4 (October 21, 1986). The City now challenges this ruling on a new basis, citing a recently decided case that calls into question whether Plaintiff can satisfy the first prong of *Ross.*

## II.

In its Motion for Reconsideration, the City argues that if it is determined that the officers were carrying out a non-governmental function, then this Court must also hold that the commission of such an act was not within the "scope of their authority." Thus, the City contends that governmental immunity still bars the claim because Plaintiff has only satisfied the sec-

---

1. For example, Defendant contends that it was Plaintiff and his companions who first began the rock throwing.

2. This Court notes that Plaintiff has recently filed an Amended Complaint which deletes any references to a false arrest. Instead, Plaintiff alleges excessive force. However, since this Amended Complaint was filed after the City's motion, this Court is bound to rely on the original Complaint in deciding whether to grant the requested relief.

ond prong of *Ross,* but not the first. The City even states that both prongs can never be satisfied because:

> These case make it clear that, in Michigan, there is something like what logicians call the law of the excluded middle at work in the area of municipal liability for the torts of police officers. Except in cases falling within one of the statutory exceptions to immunity (e.g., negligent operation of an automobile) there are only two possibilities: either the tort is committed in the exercise of a governmental function so that the municipality is immune, or the tort is committed outside the course and scope of the officer's employment, so that there is no vicarious liability. The nature of police work is such that any act by a police officer must be within the exercise of a governmental function (namely, law enforcement) in order to be within the course and scope of his/her employment. There simply is no set of factual allegations that can get around this dilemma.

City of Detroit's Brief at 4.

The City relies on three cases for the proposition that an intentional tort by a police officer is not within the scope of an officer's authority. *Lowery v. Department of Corrections,* 146 Mich.App. 342, 380 N.W.2d 99 (1985) (state not vicariously liable for intentional torts by prison guards and inmates against an inmate); *Slanga v. City of Detroit,* 152 Mich.App. 220, 393 N.W.2d 487 (1986) (city not liable for intentional tort by police officer while arresting plaintiff for solicitation—decided on September 30, 1986); *Callahan v. State Prison of Southern Michigan,* 146 Mich.App. 235, 380 N.W.2d 48 (1985) (state not vicariously liable for theft of inmate's chain by prison employees because they were not acting within the scope of employment when the chain was stolen). The City's argument, however, really only stands on two cases because *Callahan* has been vacated and remanded by the Michigan Supreme Court in light of *Ross. See Callahan, id., vacated and remanded,* 425 Mich. 866, 387 N.W.2d 386 (1986). Nevertheless, the City's argument has an intuitive ap-

peal. Its position is that officers who engage in non-governmental functions are not acting within the scope of their authority.

Before examining the merits, it is important to clarify what the City must show. First, because this is a Motion to Dismiss, the City must demonstrate there is absolutely no legal theory under which Plaintiffs would be entitled to relief. *See* Fed.R. Civ.P. 12(b)(6). All favorable inferences that can be made in support of a legal basis of relief must be drawn. C. Wright & A Miller, *Federal Practice and Procedure* § 1363 (1969). Second, under Local Rule 17(k), a motion for reconsideration can only be granted where the movant can demonstrate that the earlier decision contained a "palpable defect" and that "a different disposition of the case must result from a correction thereof." Thus, this Court must deny reconsideration unless it is absolutely certain that Plaintiffs are correct about their right to the drastic measures of dismissal.

The Michigan Supreme Court in *Ross* addressed the question of how courts should determine whether an action falls within someone's scope of authority or employment:

> The existence of a tort, the individual tortfeasor's status as an employee, agent, independent contractor, etc., *the question of whether the tortfeasor was acting during the course of employment and within the scope of authority,* and the corresponding extent of the governmental agency's vicarious tort liability will generally be determined with reference *to common-law tort and agency principles.*

*Ross,* 420 Mich. at 624 n. 38, 363 N.W.2d 641. (emphasis added)

Thus, this Court must rely on common law tort and agency principles.

According to the *Restatement (Second) of Agency* § 229 (1984), a resolution of the question regarding whether an agent is acting within his scope of employment or

authority requires the use of certain criteria:

(2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:

(a) whether or not the act is one commonly done by such servants;

(b) the time, place and purpose of the act;

(c) the previous relations between the master and the servant;

(d) the extent to which the business of the master is apportioned between different servants;

(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

(f) whether or not the master has reason to expect that such an act will be done;

(g) the similarity in quality of the act done to the act authorized;

(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

(i) the extent of departure from the normal method of accomplishing an authorized result; and

(j) whether or not the act is seriously criminal.

These criteria reflect the factors that are used by courts in determining whether an agent or employee is acting within the scope of his authority. The most significant omission in the City's brief and the cases relied upon is that there is absolutely no discussion of how these critical criteria relate to the instant cause.

■ An examination of this case in light of the *Restatement* criteria shows that the actions of these officers should be seen as being within the scope of their authority or employment for purposes of this dismissal motion, given Plaintiff's factual allegations that the City should have foreseen such a

shooting and that the City made it possible. Numerous cases from Michigan and elsewhere support this view.[3] Plaintiff's central theory about why the City should be vicariously liable is that it knew about the officer's purported violent propensities and drinking problems and yet still required them to carry a gun. Plaintiff's Complaint is built around this theory:

24. That Defendant City of Detroit, Department of Police, intentionally, carelessly, and recklessly hired James Mitchell and Richard Walczak when said Defendant knew or should have known that James Mitchell and Richard Walczak were not emotionally, physically or intellectually suitable and properly trained for said position.

25. That Defendant, City of Detroit, Department of Police, by its deliberate indifference, gross negligence, reckless disregard and negligence, has failed to adequately train, supervise, or discipline the Defendant police officers and further retained said officers when they knew or should have known that said officers were not emotionally, physically or intellectually suitable to hold said positions.

26. That Defendant, City of Detroit, Department of Police, by its deliberate indifference, gross negligence, reckless disregard and negligence, wrongfully entrusted a handgun to each of the Defendants when Defendant, City of Detroit, knew and/or should have known that said Defendant officers were emotionally, physically or intellectually unsuitable for entrustment of handguns.

27. That Defendant, City of Detroit, Department of Police, by its deliberate indifference, gross negligence, reckless disregard and negligence, improperly retained said Defendant officers as police officers and improperly allowed the said officers to carry weapons while off duty when Defendant, City of Detroit, Department of Police, knew and/or should have known that said Defendant police officers had a serious drinking problem and/or were alcoholics.

**3.** *See, infra,* 9–12.

28. That Defendant, City of Detroit, Department of Police, has established a pattern, practice, policy or custom of deliberate indifference in acquiescence to the known harm caused to citizens by police officers in its employee, including Defendant officers herein, by retaining said police officers when Defendant knew that said Defendant officers were emotionally, physically and intellectually unsuitable to be police officers and further that said police officers had a serious alcoholic problem and/or were alcoholics.

These factual allegations clearly satisfy the criterion of "whether or not the master has reason to expect that such an act will be done." *Restatement* § 229(2)(f). Satisfaction of this criterion has been held to put an action within the scope of an employee's authority in numerous cases. The Michigan Supreme Court appears to have first recognized this basis for *respondeat superior* in *Bradley v. Stevens*, 329 Mich. 556, 46 N.W.2d 382 (1951). The *Bradley* Court stated that if an auto service station operator knew, or should have known, that an employee had a serious propensity to commit a kind of violent act that the employee did, in fact, commit while at the station, the operator could be held liable under *respondeat superior* for the intentional tort. Although *Bradley* held that the particular employer did not have such knowledge regarding his employee, Plaintiff alleges the same is not true for the City of Detroit in this cause. *See also Hersh v. Kentfield Builders, Inc.*, 385 Mich. 410, 189 N.W.2d 286 (1971) (negligence case focusing on whether employer should have known employee's propensities); *Hogston v. Leonard*, 80 Mich.App. 488, 264 N.W.2d 36 (1978).

Another particularly instructive case is the Third Circuit's decision in *Dowd v. Savage*, 337 F.2d 93 (3d Cir.1964), where the court held that a stable operator could not be vicariously liable for the intentional tort of a horse trainer because the operator could never have foreseen his employee would use force on the job. Such an excuse is not available here to the Detroit police.

Innumerable other cases have also taken foreseeability alone to mean that an employee's *ultra vires* intentional tort was within the scope of authority. *See e.g. Sunseri v. Puccia*, 97 Ill.App.3d 488, 52 Ill.Dec. 716, 422 N.E.2d 925 (1981) (court incorrectly dismissed action against restaurant owner brought under *respondeat superior* theory by customer who was beaten by bartender since the owner may be liable if the violence was foreseeable); *Freeman v. Bell*, 366 So.2d 197 (La.Ct.App.1978) (manager of nightclub liable to patron who was shot by night club employee when manager knew of employee's propensity for violence, knew of prior violent incidents, and yet still allowed him to work there); *DeRosier v. Crow*, 184 Cal.App.2d 476, 7 Cal.Rptr. 540 (1960) (evidence warranted finding that employee of bowling alley and bar who assaulted plaintiff was acting within scope of employment and that employer knew of her propensity to be violent when drinking). *See also* Annotation, *Liability of Employer, Other Than Carrier, For A Personal Assault Upon Customer, Patron Or Other Invitee*, 34 A.L.R.2d 372 (listing cases). *Lowery* and *Slanga* simply do not address whether this kind of foreseeability is present. As conclusory statements of the general rule that intentional torts are not within the scope of an employee's authority, they simply do not apply to the kind of exceptional circumstances pled here. Cases like *Bradley* and *Hershfield* are more on point.

Even though foreseeability alone is enough, another factor, which was discussed in the *Restatement*, is also present here. The City entrusted Defendants with the kind of powers which enabled them to commit the alleged tort. In *Stewart v. Napuche*, 334 Mich. 76, 53 N.W.2d 676 (1952), the Michigan Supreme Court held, in part, that:

The master who puts the servant in the place of trust or responsibility ... is justly held responsible when the servant, through lack of judgment or discretion, or from informity of temper, or under the influence of passion aroused by the

circumstances and occasion, goes beyond the strict line of his duty or authority, and inflicts an unjustifiable injury upon another.

*Id.* at 80, 53 N.W.2d 676, *citing, Cook v. Michigan Central R. Co.*, 189 Mich. 456, 155 N.W. 541 (1915). Thus, the employee was viewed as being within the scope of his authority because the master had impliedly provided the employee with the ability to do the act. The employer had impliedly authorized the act.

The Sixth Circuit explicitly affirmed this line of cases in *Kroger Company v. Andrews*, 240 F.2d 837 (6th Cir.1957). In *Kroger*, the court addressed the question of "whether the manager of appellant's store was or was not acting within the scope of his authority when he assaulted the plaintiff-appellee." *Id.* The court answered that an intentional tort by an employee was within the scope of employment and could be vicariously charged to the employer if the employer put the employee in the position where he could commit the act. The court cited *Napuche* as authority. On several occasions, the Michigan Supreme Court has taken the position that vicarious liability is appropriate where the principle made possible the agent's tort. *See McCann v. Michigan*, 398 Mich. 65, 247 N.W.2d 521 (1976);[4] *Poledna v. Bendix Aviation Corp.*, 360 Mich. 129, 103 N.W.2d 789 (1960).

One Michigan Appellate Court has even explicitly held that the City of Detroit could be liable under the theory of *respondeat superior* for an intentional tort committed by an off duty police officer. *Graves v. Wayne County*, 124 Mich.App. 36, 333 N.W.2d 740 (1983). *Graves* relied largely

on the fact that the officer was aided in accomplishing the tort by the existence of the agency relationship. *Id.* at 41, 333 N.W.2d 740. *Graves*, therefore, held that a question of fact existed as to whether the officer was within the scope of his authority that precluded summary judgment. The reasoning of *Graves* is entirely on point here and explains why this Court holds that the dismissal of the City in the instant case to be inappropriate. *See also Williams v. State of Michigan*, 144 Mich.App. 438, 376 N.W.2d 117 (1985) (post-*Ross* case); *Bozarth v. Harper Creek Board of Ed.*, 94 Mich.App. 351, 288 N.W.2d 424 (1979).

■ A third factor, which was discussed by the Restatement and closely related to the prior factor, is "whether or not the instrumentality by which the harm is done has been furnished by the master to the servant." *Restatement* § 229(2)(h). Here, the gun was clearly furnished by the City. This factor provides another basis for suggesting that a jury could find Plaintiff was acting within the scope of his authority. Other factors in the *Restatement* may be satisfied as well. The decisions in *Lowery* and *Slanga* do not bind this Court because they ignore all of the criteria within the *Restatement* and in innumerable other Michigan cases.[5] This Court holds that under Michigan law, a police officer may be held by a jury to be acting within the scope of his authority when he commits an *ultra vires* intentional tort if the City should have foreseen it, put him in a position where he could commit it, and furnished him with the necessary instrumentality. Thus, dismissal is inappropriate.[6]

---

**4.** It is true that in *McCann*, the court focused in part on whether the employees appeared to be acting for the hospital in deciding whether the conduct was within the scope of their employment. Although this is certainly a factor worth considering, it is not a necessary factor, especially whereas here, there are such strong allegations that the Department should have foreseen this conduct.

**5.** This Court notes it is bound by Michigan law. However, it is not bound by appellate state decisions which appear to run counter to deci-

sions by the Michigan Supreme Court and which are contradicted by other appellate court decisions.

**6.** The Second Circuit has held a city liable for a shooting by off duty police officers with a similar history of violence that could have been foreseen. *See Bonsignore v. City of New York*, 683 F.2d 635 (1982). In the instant case, this Court also notes its interpretation appears to give fuller meaning to the two part test in *Ross.* The City's interpretation in contrast renders the test meaningless since it can never be satisfied.

### III.

This Court will briefly address the conclusion, which appears at the end of the recent decision in *Slanga,* that an officer carries out a government function when he commits an intentional tort during an arrest. The court relied on the often cited *Sherbutte v. Marine City,* 374 Mich. 48, 130 N.W.2d 920 (1964) to support this proposition. This Court has no objection to this holding.

 However, *Slanga* is disturbing because it involved accusations of false arrest, not just an arrest. This Court must, therefore, reject the holding in *Slanga* as contrary to most other Michigan decisions and as contrary to *Ross* if the court meant that a false arrest is a government function. *Ross* made clear that a governmental function is one where "the activity was expressly or impliedly mandated or authorized by constitution, statute, or law." 420 Mich. at 620. It is impossible to say that a false arrest is ever impliedly authorized by law. The law simply does not permit *ultra vires* intentional torts by police officers.[7] Put more simply, the law never authorizes illegality. Moreover, numerous Michigan cases have held *ultra vires* intentional torts are not government functions. *See e.g., Lockaby v. Wayne County,* 406 Mich. 65, 276 N.W.2d 1 (1979); *Williams,* 144 Mich.App. 438, 376 N.W.2d 117; *Smith v. Michigan,* 122 Mich.App. 340, 345–46, 333 N.W.2d 50 (1983) (*ultra vires* intentional torts are not a government function). Thus, the officer's actions must be viewed as non-governmental for the purposes of this motion.

### CONCLUSION

Plaintiff has pled facts which could allow a state tort claim against the City. Thus, this Court's decision did not contain any defect which would warrant the granting of a Motion for Reconsideration. These matters should be decided by the trier of fact. The City's Motion for Reconsideration of this Court's reinstatement of the state tort claim must be denied.[8]

IT IS SO ORDERED.

---

7. As the previous section indicated, however, the police department may by its omission authorize such acts, bringing them within the officer's scope of authority.

8. This Court will also deny the City's Motion for Certification of an interlocutory appeal under 28 U.S.C. § 1292(b). The abundance of law, which has been cited in this Opinion, and the exceptional facts of this case, demonstrate that the drastic measure of dismissal is clearly not warranted here.