VARGO v SVITCHAN

Docket No. 44963. Submitted May 6, 1980, at Detroit.—Decided
    October 22, 1980. Leave to appeal applied for.

Gregory R. Vargo, Walter Vargo, and Patricia Vargo brought an
    action against George Svitchan, a school athletic director,
    Ernest Mayoros, a school principal, Dr. T. E. Hagadone, a
    school district superintendent, and the Riverview Community
    School District, and others for negligence resulting in injuries
    to Gregory R. Vargo during high school football tryouts. Defen-
    dants Svitchan, Mayoros, Hagadone, and the school district
    moved for accelerated judgment on the grounds of governmen-
    tal immunity, which motions were granted, Wayne Circuit
    Court, Andrew DiMaggio, J. Leave to appeal was denied by the
    Court of Appeals. Plaintiffs sought leave to appeal in the
    Supreme Court which, in lieu of leave to appeal, remanded to
    the Court of Appeals to hear the appeal as on leave granted.
    Vargo v Svitchan, 406 Mich 943 (1979). On appeal, plaintiffs
    allege that the trial court erred in granting defendants' mo-
    tions for accelerated judgment on the grounds of governmental
    immunity. Held:

    1. The trial court erred in granting defendant Mayoros'
    motion for accelerated judgment on the grounds of governmen-
    tal immunity since, as principal, he had direct control of the
    use and condition of the school's facilities and had a duty to
    reasonably exercise supervisory powers so as to minimize injury
    to his students. Governmental immunity would not insulate
    him from liability for negligent performance of these duties.

    2. The trial court erred in granting defendant Svitchan's

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4] 57 Am Jur 2d, Municipal, School, and State Tort Liability
    § 95.
[2] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 45,
    46.
[4] Tort liability of public schools and institutions of higher learning
    for accidents occurring during school athletic events. 35 ALR3d
    725.
[5] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 94,
    96.
[6, 7] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 150.
[8] 20 Am Jur 2d, Courts § 187.

motion for accelerated judgment on the grounds of governmental immunity since plaintiffs alleged active, personal negligence on his part and not negligence committed as a public functionary which would come under the protection of the governmental immunity statute.

3. The trial court properly granted defendant Hagadone's motion, since no allegations of his personal neglect were made.

4. The trial court properly found that the defendant school district was not liable under the defective building exception to the governmental immunity statute.

Reversed in part, affirmed in part, and remanded for trial.

1. SCHOOLS — SCHOOL PRINCIPALS — GOVERNMENTAL IMMUNITY.

   The extent to which a school principal is protected by the doctrine of governmental immunity is dependent upon whether the act complained of falls within the principal's discretionary or ministerial powers.

2. PUBLIC OFFICERS — PUBLIC EMPLOYEES — GOVERNMENTAL IMMUNITY — DISCRETIONARY ACTS — MINISTERIAL ACTS.

   Discretionary acts are acts of a legislative, executive, or judicial nature for purposes of determining the extent of protection afforded a public employee by the doctrine of governmental immunity; ministerial acts are those where a public employee's conduct is delineated, leaving him little decision-making power during the course of his performance.

3. SCHOOLS — SCHOOL PRINCIPALS — SUPERVISORY POWERS — GOVERNMENTAL IMMUNITY — NEGLIGENCE.

   A school principal has a duty to reasonably exercise his supervisory powers in such a way as to minimize injury to students in his charge although such powers are incident to his public function, and, where a principal negligently performs this duty, governmental immunity does not operate to insulate him from all liability.

4. SCHOOLS — SCHOOL ATHLETIC DIRECTORS — GOVERNMENTAL IMMUNITY — STATUTES.

   A school athletic director is not entitled to the protection of the governmental immunity statute where any alleged tort liability is based upon an abuse of a personal and direct duty to provide a safe program of athletic activities and not upon negligence committed as a public functionary (MCL 691.1407; MSA 3.996[107]).

5. SCHOOLS — SCHOOL SUPERINTENDENTS — IMPUTATION OF SCHOOL EMPLOYEES' NEGLIGENCE — GOVERNMENTAL IMMUNITY — STATUTES.

Possible personal negligence of school employees cannot be imputed to a school superintendent merely because he was in a supervisory position; absent allegations of personal neglect, he is protected by the governmental immunity statute (MCL 691.1407; MSA 3.996[107]).

6. STATES — GOVERNMENTAL IMMUNITY — DANGEROUS OR DEFECTIVE PUBLIC BUILDINGS — STATUTES.

The question whether a part of a public building is dangerous or defective for purposes of assessing liability under the defective building exception to the governmental immunity statute should be determined in light of the uses or activities for which it is specifically assigned, and the significance of a defect in relation to any alleged injuries is a question of fact (MCL 691.1406, 691.1407; MSA 3.996[106], 3.996[107]).

7. STATES — DEFECTIVE PUBLIC BUILDINGS — GOVERNMENTAL IMMUNITY — PUBLIC PLACE.

The defective public buildings exception to governmental immunity should not depend on whether the instrumentality causing an injury is a fixture or a structural part of a public building, but whether the injury occurred in a public place and whether such place was fit for its assigned and intended use.

8. COURTS — JUDICIAL CONSTRUCTION — EXCEPTIONS TO GENERAL RULES.

A court, when construing an exception to a general rule, should not derogate the general rule to the extent that its intent and purpose is undermined.

*Alspector, Sosin, Mittenthal & Barson, P.C.,* for plaintiffs.

*Harvey, Kruse & Westen, P.C.* (by *Jonathan Martin),* for defendants.

Before: BEASLEY, P.J., and M. F. CAVANAGH and W. A. PORTER,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

M. F. CAVANAGH, J. Plaintiffs brought this action against defendants as a result of injuries sustained by Gregory Vargo. On the grounds of governmental immunity, MCL 691.1407; MSA 3.996(107), the trial court granted accelerated judgment[1] to defendants Svitchan, the athletic director, Mayoros, the high school principal, Hagadone, the school district superintendent, and the Riverview Community School District. Leave to appeal was initially denied by this Court. Plaintiffs sought leave to appeal to the Supreme Court which, in lieu of leave to appeal, remanded to this Court to hear the case as on leave granted. *Vargo v Svitchan,* 406 Mich 943 (1979).

On June 25, 1973, Gregory Roy Vargo, a 15-year-old high school student, reported for the first of a scheduled series of weight lifting training sessions in preparation for high school football team try-outs in the Fall. This session was conducted at the high school in the gymnasium. Allegedly urged on by the coach, Dr. Donald Lessner, to perform to the utmost, Gregory Vargo pushed himself to and beyond his limits, and, while lifting a 250 to 300 pound weight, he fell and received injuries resulting in paraplegia. It is alleged Gregory Vargo's two "spotters", Mark Mayoros and Gary Merker, failed to react quickly enough to seize the barbell before the fall.

Plaintiffs' complaint, twice amended, alleges that appellee Svitchan, the Athletic Director, appellee Ernest Mayoros, the Principal, and appellee Hagadone, the School Superintendent, negligently supervised Coach Lessner and allowed Lessner to abuse students and to threaten and pressure them

---

[1] The proper motion would have been one for summary judgment, GCR 1963, 117.2(1). However, this mislabeling is not fatal in the absence of prejudice. *Butler v Wayne County Sheriff's Dep't,* 75 Mich App 202; 255 NW2d 7 (1977).

into attempting athletic feats beyond their capabilities, resulting in Gregory Vargo's injury. The complaint further alleges that the gymnasium facilities were inadequate and defective because lack of sufficient ventilation caused Gregory Vargo to perspire excessively, contributing to his injuries.

MCL 691.1407; MSA 3.996(107), reads:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function."

The question as to whether the protection afforded a governmental unit by the above statute extends to its individual agents or employees is presently unsettled in Michigan. The state of the law in this regard has been accurately assessed by Judge BRENNAN in his opinion in *Cook v Bennett,* 94 Mich App 93, 98-100; 288 NW2d 609 (1979):

"We next address the propriety of the summary judgment in favor of the school principal, Vera Bennett. The summary judgment was based upon the lower court's determination that the school principal was protected by governmental immunity.

"As to this particular issue the Michigan Supreme Court has not rendered any practical guidance to the bench and bar. In *Lovitt v Concord School District,* [58 Mich App 593, 598; 228 NW2d 479 (1975)], Judge DANHOF, writing for a panel of this Court, held that the governmental immunity which protects a school district is extended to the school principal. Justices KAVANAGH, FITZGERALD, and LEVIN would hold that a school district, and thus its employees, are not protected by governmental immunity. *Galli v Kirkeby,* 398 Mich 527, 531; 248 NW2d 149 (1976). Justices WILLIAMS and RYAN in *Galli, supra,* 531, would overrule Judge DANHOF's holding in *Lovitt* while Chief Justice COLEMAN would hold that the principal's function of supervising the

school personnel (the claimed breach in the present case) is protected by governmental immunity. *Galli, supra,* 542.

"The recent Supreme Court case of *Bush v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979), does not allay the confusion in the area. There the question of the applicability of governmental immunity to a school principal was summarily addressed. *Bush, supra,* 733. In that case it was alleged that the principal was apprised of the dangerous condition of the substitute lab room and failed to take appropriate action to protect the students. Justices LEVIN, KAVANAGH and FITZGERALD found that the complaint did state a claim against the principal. Chief Justice COLEMAN and Justice MOODY found that the principal was performing discretionary activities that are of essence to government and was thus protected by governmental immunity. *Bush, supra,* 734. Justice WILLIAMS in *Bush, supra,* 734, would hold the principal liable only for '*ultra vires* acts' in accordance with *McCann v Michigan,* 398 Mich 65, 73-74; 247 NW2d 521 (1976).

"It goes without saying that this area of the law is unsettled. Although we perceive a trend in Michigan to severely limit governmental immunity, as yet the problem of its applicability must be contended with."

The Court in *Cook, supra,* 100, then proceeded to evaluate the liability of the defendant principal in terms of the following test:

"The extent to which a school principal is protected by immunity is dependent upon whether the act complained of falls within the principal's discretionary or ministerial powers. Justice COOLEY, in *Wall v Trumbull,* 16 Mich 228, 234 (1867), draws the distinction as follows:

" 'A ministerial officer has a line of conduct marked out for him, and has nothing to do but to follow it; and he must be held liable for any failure to do so which results in the injury of another. A judicial officer, on the other hand, has certain powers confided to him to be exercised according to his judgment or discretion;

and the law would be oppressive which should compel him in every case to decide correctly at his peril.'

"Discretionary acts are those of a legislative, executive or judicial nature. *Sherbutte v Marine City,* 374 Mich 48, 54; 130 NW2d 920 (1964). Ministerial acts are those where the public employee has little decision-making power during the course of performance, but rather his conduct is delineated."

Employing these distinctions, the *Cook* Court concluded that:

"Even though the supervisory powers of the school principal are incident to her public function, she has a duty to reasonably exercise these powers in such a way as to minimize injury to students in her charge. Where the principal negligently performs this duty, government immunity does not operate to insulate her from all liability. Accordingly, the lower court's ruling to the contrary is erroneous." *Cook, supra,* 101.

In the case at bar, the plaintiffs, in their complaint, have set forth lengthy allegations concerning the purported negligence of Riverview Community High School Principal Ernest Mayoros. The plaintiffs have averred that Principal Mayoros was negligent by "inducing, suggesting, encouraging * * * intimidating and coercing plaintiff Gregory Roy Vargo * * * to attend the weight lifting session and to attempt to lift and lower heavy weights without having inquired as to his experience or capabilities to lift such weights without properly instructing him and other members of the class as to techniques of safety that would avoid injury and without providing proper mechanical and/or human safeguards * * *." The plaintiffs have further alleged that Principal Mayoros was negligent "by failing to stop the illegally *[sic]* conducting of an organized summer program

for varsity football players contrary to Michigan High School Athletic Association rules", and "by failing to promulgate adequate rules, regulations, procedures and safeguards, and by failing to properly instruct and train the coach, assistant coaches, and Athletic Director herein * * *". The plaintiffs finally claim that Principal Mayoros was negligent because he failed to inspect the activities that were being conducted by Coach Lessner, because he permitted the use of an improperly-equipped room, and because he failed to take action upon receiving a complaint and notice that Coach Lessner was "too rough" on his prospective football players.

According to the analysis set forth in *Cook, supra,* it appears that the principal in the instant case should not be covered by the cloak of governmental immunity. As in *Cook,* Principal Mayoros had a duty to reasonably exercise supervisory powers so as to minimize injury to his students. The principal of the school maintains direct control over the use and condition of the facilities. Therefore, if the weight lifting room was, in fact, improperly equipped and designed for that use, the defendant principal would bear direct responsibility. Moreover, if the summer weight lifting program was, in fact, in violation of MHSAA rules and regulations, it would be the principal, Ernest Mayoros, who would be in charge of such a program. Finally, it must be noted that weight lifting is an activity which requires special training and supervision; overexertion and resultant injuries are foreseeable and frequent in the absence of proper supervision. If such a program was to be conducted in the high school, the principal had a duty to minimize injury to the participating students.

Although the liability (or lack thereof) of a school athletic director under the governmental immunity statute has not been previously addressed by this Court, it seems that the above reasoning and outcome should apply with equal vigor to that person who is in direct control of the athletic program under which the plaintiff is injured. In the instant case, athletic director George Svitchan was directly in charge of the football program and Coach Lessner. As athletic director, the summer weight lifting program was not only within his knowledge but was also his direct responsibility. George Svitchan was the person in a position and authority to oversee the practices and stop any unsafe activities. Due to the specialized nature of the position, Mr. Svitchan, more so than the principal, should have promulgated reasonable safety precautions and minimized injury to the students. The athletic director must be presumed to know the nature of the class and the physical requirements and limitations of its participants. One cannot say that all reasonable men would agree that no negligence could be inferred under the circumstances. That question should be left to the jury. *Knapp v City of Dearborn,* 60 Mich App 18; 230 NW2d 293 (1975).

We conclude that the plaintiffs' allegations are of active, personal negligence on the part of the athletic director. The alleged liability is not based upon negligence committed as a public functionary. Since the plaintiff was injured in the course of an athletic activity, a trier of fact could find that defendant Svitchan abused a personal and direct duty to provide a safe weight lifting program. Defendant Svitchan is not entitled to the protection of the governmental immunity statute.

However, the same cannot be said for Superin-

tendent T. E. Hagadone. We are unable to discern in the complaint any allegations of "personal neglect" on the part of the superintendent. The essence of the plaintiffs' allegations is that Mr. Hagadone was negligent in his supervisory responsibilities. The possible negligence of the coach (and other school employees) cannot be imputed to him merely because he was in a supervisory position. But see *Bush, supra,* 733.

Plaintiffs also appeal from the trial court's decision that the defendant school district is immune from suit because it is not liable under the defective building exception to the governmental immunity statute, the pertinent part of which follows:

"Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building." MCL 691.1406; MSA 3.996(106).

The interpretation of this statutory exception has undergone recent revision by the Michigan Supreme Court. Early cases involving the public building exception consistently held that an exemption from governmental immunity is not made out under MCL 691.1406; MSA 3.996(106) unless the injury was sustained from a structural part of the building or a fixture attached thereto. *Zawadzki v Taylor,* 70 Mich App 545; 246 NW2d 161 (1976), *lv den* 399 Mich 875 (1977), *Green v Dep't of Corrections,* 30 Mich App 648; 186 NW2d 792 (1971), *Jackson v Detroit Board of Education,* 18 Mich App 73; 170 NW2d 489 (1969), *Smith v Clintondale School Dist,* 14 Mich App 153; 165 NW2d 332 (1968).

The scope of MCL 691.1406; MSA 3.996(106) was

broadened in *Pichette v Manistique Public Schools,* 403 Mich 268; 269 NW2d 143 (1978), in which a child sustained serious injuries on a playground slide. The Michigan Supreme Court held that a slide permanently affixed to the school playground on the premises adjacent to the school building existed for the purpose of facilitating the use and enjoyment of that building and was, thus, within the statutory public building exception. The Court consequently held that the defendant school district may be liable for injuries caused by its negligence in failing to properly repair and maintain the slide. See also *Schmit v Detroit,* 88 Mich App 22; 276 NW2d 506 (1979).

The scope of the public building exception has recently been expanded even further in *Bush, supra.* That case involved a suit against the school district, the superintendent, the principal, and a teacher. There, a physical science class that had been conducted in a chemistry laboratory was rescheduled (due to increased enrollment) to meet in a nonlaboratory room, not equipped with a safety shower, ventilation or exhaust hoods, sinks, enclosed storage areas, stationary laboratory desks, and water and gas outlets as had been present in the other room. The classroom teacher had complained about the room being too crowded, about the tables moving too easily, and about the difficulty and confusion of managing too many students there.

After an experiment involving the lighting of portable alcohol burners, the students were to extinguish the burners and return them to the counter. When the plaintiff was returning her burner, she noticed a lighted burner on the counter and attempted to extinguish it. An explosion occurred and she caught fire and was injured.

While the accident occurred within a building, there was no allegation in the plaintiff's cause of action that her injury had been caused by any existing part of the building or permanently attached fixture. Rather, plaintiff averred that the defendant school district was liable under the public building provision because of the improper design of the classroom and the absence of safety devices. The trial judge granted defendants' motion for summary judgment on the ground that the complaint failed to state a claim upon which relief could be granted. The Court of Appeals affirmed as to the school district and the superintendent and reversed as to the principal and teacher. 72 Mich App 670; 250 NW2d 759 (1976). The Michigan Supreme Court concluded that the complaint stated claims as to all defendants and remanded for trial, stating that:

"[T]he question whether a part of a building, in this case a classroom, is dangerous or defective is to be determined in light of the 'uses or activities' for which it is 'specifically assigned', in this case a physical science class.

\*    \*    \*

"To be sure, the lack of certain safety devices did not render the classroom defective per se; it is ordinarily unnecessary to install laboratory safety equipment in classrooms. In determining whether a place is safe, one must consider the use or purpose it serves. A building may be safe for one use or purpose, but not for another. A school is not a school because it is called one, but because it is used and functions as one. If a hospital is converted into a prison, the building must be maintained as a safe prison, not as a safe hospital. The room in which Foxworth was injured had by use become a physical science room, and therefore had to meet the standards of a physical science room although it had once been a mathematics room.

"The trier of fact must determine whether the room

was defective when used as a physical science classroom and, if so, whether the defect was a cause of Foxworth's injuries. Conceding that the alleged 'course of classroom conduct * * * would be dangerous even in a properly equipped laboratory', it is yet possible that if the room were properly equipped the accident would not have occurred or the injuries would have been less severe. The question of the significance of the defect in relation to the alleged injuries is a question of fact." *Bush, supra,* pp 731-732.

Similar results were reached in *Lockaby v Wayne County,* 406 Mich 65; 276 NW2d 1 (1979), and *Westervelt v Dep't of Corrections,* 406 Mich 941; 277 NW2d 642 (1979).

These cases make it clear that the exception to governmental immunity found in MCL 691.1406; MSA 3.996(106) is no longer to be governed by whether the instrumentality causing the injury was a fixture or structural part of the public building. Of concern now is whether the injury occurred in a "public place" and whether that public place was fit for its assigned and intended use.

In the instant case, the plaintiffs' allegations invoking the public building exception follow the vein of *Bush.* The plaintiffs do not point to a particular fixture or part of the building as dangerous but aver that the defendant school district was negligent for the following reasons:

"'* * * providing a school building and room that was defective and inadequate for the activity required or directed to be performed; that there was inadequate ventilation, excessive heat and perspiration which caused or contributed to the injuries sustained, and/or by otherwise failing to use due care in the ownership, maintenance, operation, utilization of such school building and/or by otherwise failing to use due care."

The plaintiffs further allege that, at the time of the accident, the weight lifting room failed to have sufficient numbers of weight lifting safety machines or power racks to be used by the students and that the available floor mats or pads were not being used on the concrete floor to prevent possible slippage and lessen the likelihood of serious injury.

Thus, the plaintiffs in the case at bar, like the plaintiff in *Bush,* have alleged the existence of a dangerous condition on the basis of "fitness for intended use" and the absence of safety devices.

However, as the defendant school district notes, in the present case, unlike *Bush* and *Lockaby,* the complained-of room was being used as expected, as a gymnasium. Plaintiffs' argument that the gymnasium was dangerous because there was inadequate ventilation and consequent excessive perspiration (causing the barbells to slip) would possibly require a distorted interpretation of the statutory exception and the concept of "dangerous or defective". It is a common, and indeed unavoidable, experience that athletes perspire while in action. To allow the plaintiffs' claim in this regard would be to overextend the purpose and meaning of the statute. The plaintiffs' allegations fall more within the tenor of danger caused by the negligence (failure to exercise due care) of individual employees of the school district, rather than danger caused by the building itself. It appears from the facts that the lack of supervision, not a defect in the building, was the cause of the plaintiff's injuries. Justice RYAN's reasoning in his dissent in *Bush, supra,* 738-739, is applicable to the case at bar:

"Although I find the majority approach appealing as a substantive rule of law, I am compelled to dissent because such a construction of the 'building' exception

does not at all square with the manifest intent of the Legislature as expressed in the governmental immunity statute, MCL 691.1407; MSA 3.996(107).

\* \* \*

"When construing an exception to a general rule, care must be taken not to derogate from the general rule to the extent that its intent and purpose is undermined. See *Grand Rapids Motor Coach Co v Public Service Commission,* 323 Mich 624, 634; 36 NW2d 299 (1949). Today's majority construes and applies the 'building' exception in a way which significantly undermines the intent of the general immunity provision by characterizing as a building defect what is actually the behavior of the school district's employees in utilizing a portion of the school building for a unique and highly specialized and always dangerous purpose, one for which it was not designed, constructed or intended to be used."

In the instant case, the plaintiffs' allegations concerning a defective or dangerous condition stem not from the condition of the building itself but from the activities or operations conducted within the building. To hold otherwise would expand the public building exception far beyond its purpose and intent and do violence to the will of the Legislature.

The order of the trial court granting accelerated judgment to defendants Ernest Mayoros and George Svitchan is reversed, the grant of accelerated judgment to defendants Hagadone and Riverview Community School District is affirmed, and the matter is remanded for trial.

Reversed in part, affirmed in part.