REARDON v DEPARTMENT OF MENTAL HEALTH

Docket No. 88192. Submitted October 20, 1986, at Lansing. Decided February 2, 1987. Leave to appeal applied for.

Claudette M. Reardon brought an action in the Court of Claims against the Michigan Department of Mental Health for damages resulting from a sexual assault she suffered while staying in a dormitory operated by the department. Defendant's motion for summary judgment based on a claim of governmental immunity was denied by the court, Carolyn Stell, J. Following a trial, the court awarded plaintiff a verdict of $500,000. Defendant appeals.

The Court of Appeals *held:*

The exception to governmental immunity in the case of a dangerous public building condition applies to this case. A dangerous condition in a public building may exist because of inadequate safety devices.

1. The trial court did not clearly err in finding a dangerous public building condition arising from the inadequacy of the locks on plaintiff's door under the known circumstances.

2. The trial court did not err in finding that defendant knew of the numerous keys which could be used to open the door and that the chain lock was not reasonably secure.

3. The trial court's findings regarding plaintiff's damages were supported by the record and were not clearly erroneous.

Affirmed.

1. Governmental Immunity — Defective Public Buildings.

An exception to governmental immunity is provided in the case

References

Am Jur 2d, Municipal, School and State Tort Liability §§ 150 *et seq.*

Claims based on construction and maintenance of public property as within provision of 28 USCS § 2680(a) excepting from Federal Tort Claims Act claims involving "discretionary function or duty". 37 ALR Fed 537.

Tort liability of public schools and institutions of higher learning for accidents occuring during use of premises and equipment for other than school purposes. 37 ALR3d 712.

See also the annotations in the Index to Annotations under Governmental Immunity or Privilege.

of a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition (MCL 691.1406; MSA 3.996[106]).

2. GOVERNMENTAL IMMUNITY — DEFECTIVE PUBLIC BUILDINGS.

A dangerous condition in a public building may exist, for purposes of applying the statutory exception to governmental immunity pertaining thereto, because of inadequate safety devices; the question of whether a part of a building is dangerous must be determined in light of the use or purpose that part is intended to serve (MCL 691.1406; MSA 3.996[106]).

*Steven E. Ford,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *George L. McCargar* and *Thomas R. Wheeker,* Assistant Attorneys General, for defendant.

Before: SULLIVAN, P.J., and SHEPHERD and R. M. SHUSTER,* JJ.

SHEPHERD, J. Plaintiff brought suit against the state for a sexual assault she suffered while staying in a dormitory operated by the Michigan Department of Mental Health. Defendant moved for summary judgment, which the Court of Claims denied. Following a trial, the court awarded plaintiff a verdict of $500,000. Defendant appeals on the grounds of governmental immunity and excessiveness of the verdict. We affirm. We find the dangerous or defective building exception to governmental immunity controlling and do not find the verdict excessive.

Plaintiff was a nursing student at the Sault College of Applied Arts and Technology in Canada. As part of her studies, she came early in 1980 to

* Circuit judge, sitting on the Court of Appeals by assignment.

receive four months of practical training at the Newberry Regional Mental Health Center (MHC) in Newberry. The MHC is a facility operated by the Department of Mental Health to care for mentally ill and developmentally disabled individuals. While at the center, plaintiff stayed in a dormitory-like residence called the Employees' Home, operated by the MHC.

The main entrances to the Employees' Home were never locked. Plaintiff's room had a key-operated lock which locked automatically when the door was closed. It also was secured by a chain lock, which plaintiff used. Early in the morning of April 17, 1980, plaintiff awakened to find Arthur Green, an MHC employee who had trained plaintiff in the physical handling of aggressive patients, lying on the floor next to her bed and touching her leg. For one-half hour, Green repeatedly touched and rubbed plaintiff's body, including her breasts and genital area, and attempted to have sexual intercourse with her. He covered her mouth and threatened to hurt her if she told anyone. Green also told her he would be back.

After crying all night, plaintiff told another student and, at the student's urging, told an instructor. She eventually reported the incident to the police. Green ultimately pled guilty to some unspecified offense. Plaintiff and the other students, however, did not complete the program at MHC following the incident.

Eighteen people had various master keys which would open plaintiff's door. Dozens of previous occupants of plaintiff's room had been given keys for that room. Apparently no substantial control over duplication of keys existed, nor had the door locks in the Employees' Home ever been changed. Green apparently obtained a duplicate master key in some unexplained fashion. According to the

defendant, the key had not been issued by the MHC and Green was not authorized to have it. Nor did Green's job authorize him to be in the Employees' Home. Green also circumvented the chain lock on plaintiff's door by separating a chain link. This was done without waking plaintiff.

Plaintiff sued the defendant in the Court of Claims on September 2, 1980, alleging negligence in employing Green, in failing to safeguard duplication of keys, and in failing to prevent access to student rooms. The state moved for summary judgment pursuant to GCR 1963, 117.2(1), failure to state a claim, on February 3, 1984. The defendant argued that the operation of MHC was a governmental function and that plaintiff had failed to plead any facts in avoidance of the corresponding governmental immunity. The Court of Claims denied the motion on February 13, 1984, finding that: (1) the operation of the Employees' Home was not a governmental function; (2) there was no governmental immunity for damages resulting from intentional torts and the defendant's vicarious liability was a fact question for the court; and (3) plaintiff had pled sufficient facts to raise the question of faulty design or maintenance and insufficient safety, bringing the case within the dangerous or defective building exception to governmental immunity.

A bench trial followed on February 16, 1984. The Court of Claims issued its opinion on September 10, 1985, having the benefit of the Supreme Court's decision in *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984). The Court of Claims found that, under *Ross*, the operation of the Employees' Home was a governmental function to which governmental immunity would extend. The court found no evidence of negligence in hiring Green. The court also

found, however, that plaintiff had shown: (1) that she was injured; (2) that her room was dangerous or defective for use as a dormitory room; (3) that the defendant had actual or constructive knowledge of the dangerous or defective condition; (4) that the defendant failed to remedy the condition or take reasonably necessary action to protect plaintiff within a reasonable time; and (5) this dangerous or defective room condition was a proximate cause of plaintiff's injuries. Thus, plaintiff had established an exception to governmental immunity.

The Court of Claims specifically found that "the absence of a method of securely locking a door of a room where one is to sleep is a dangerous and defective condition of that room," citing *Smith v Clintondale School Dist*, 14 Mich App 153; 165 NW2d 332 (1968). The court noted that, given the number of keys in circulation, plaintiff could not be assured that she was secure inside her room. Despite this, plaintiff was never told of the master keys so she could make her own arrangements to fasten the door more securely. The Court of Claims stated:

> The absence of such a lock or a warning made the room dangerous and defective, and the Court so finds. The Court further finds the chain lock was not reasonably suited to making the room secure. If anything, it created a false sense of security, because one engaging the chain would think the door was secured. Instead, as proven in this case, the chain was easily defeated.

The court awarded plaintiff $500,000 in damages.

Governmental immunity is provided in all cases in which a governmental agency is engaged in the exercise or discharge of a governmental function. MCL 691.1407; MSA 3.996(107). The statute was

amended on July 6, 1986, to provide that it does not grant governmental immunity "to a governmental agency with respect to the ownership or operation of a hospital . . . ." MCL 691.1407(4); MSA 3.996(107)(4). Because this case was pending at the time *Ross* was decided, however, the amendment does not apply and the operation of MHC must be considered a governmental function to which governmental immunity extended. *Hyde v University of Michigan Board of Regents*, 426 Mich 223, 246; 393 NW2d 847 (1986).

The Legislature also provided an exception to governmental immunity, in effect at the time of the *Ross* decision, which is relevant to this case. MCL 691.1406; MSA 3.996(106) provides in part:

> Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a *dangerous or* defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition. Knowledge of the dangerous and defective condition of the public building and time to repair the same shall be conclusively presumed when such defect existed so as to be readily apparent to an ordinary observant person for a period of 90 days or longer before the injury took place.

The defendant's major argument is that the building had no defect. The defendant contends that no evidence demonstrated the chain lock was actually defective, and that the rooms were protected by "expensive" automatic locks which did

not malfunction. The defendant further contends that plaintiff's injuries resulted from Green's improper use of a key and his assaultive behavior, not from any structural defect in plaintiff's room or door or in their design.

This ignores the statutory language allowing liability solely in the case of a dangerous building condition. A dangerous condition in a public building may exist because of inadequate safety devices, among other reasons. The question of whether a part of a building is dangerous must be determined in light of the use or purpose that part is intended to serve. *Young v Ann Arbor,* 119 Mich App 512, 520-521; 326 NW2d 547 (1982), *On Rehearing,* 125 Mich App 459; 336 NW2d 24 (1983), remanded on other grounds for reconsideration 422 Mich 901 (1985). The chain and automatic lock on plaintiff's door were part of the Employees' Home, a building under the defendant's control open for use by members of the public. The building was intended to house students. It seems certain that safe housing was intended for students while they studied at MHC. There was some testimony, for example, that access by visitors was restricted at night. The existence of eighteen master keys circulated in such a manner as to allow duplication of keys and access to student rooms by unauthorized and dangerous persons could certainly create a dangerous condition of that building, and particularly of plaintiff's room and door. This was, after all, a dormitory on the grounds of a mental health center. The use of a chain lock that could be easily broken without waking a sleeping occupant could also create a dangerous condition. If it was insufficient to provide security, the chain lock could also be viewed as defective. There was ample evidence before the Court of Claims from which it could find the existence of a

dangerous condition of the building. That finding was not clearly erroneous. MCR 2.613(C).

The defendant cites *Hinds v Dep't of Corrections,* 126 Mich App 99; 337 NW2d 1 (1982), lv den 422 Mich 902 (1985), and *Lowery v Dep't of Corrections,* 146 Mich App 342; 380 NW2d 99 (1985), lv den 425 Mich 869 (1986), in support of its position. In *Hinds,* this Court found the public building exception inapplicable where the complaint alleged a "structural defect" in a prison by which inmates gained access to the toxic duplicating fluid which the decedent consumed. It is apparent from the opinion that access was had through the illegal acts of prisoners and guards. In *Lowery,* the plaintiff was injured in a series of assaults by guards and inmates. This Court held that the public building exception does not extend to allegations of: (1) failure to provide protection from, or adequate supervision of, other inmates; (2) failure to provide adequate staff and medical care; or (3) a failure to properly classify a prisoner and remove him from the general prison population. These allegations do not constitute allegations of danger caused by the building. 146 Mich App at 358. The instant case clearly relates to a dangerous condition of the building itself, or a part of the building, arising from the inadequacy of the locks on plaintiff's door under the known circumstances. It is thus a case quite different from *Hinds* or *Lowery.*[1]

[1] Such facts also distinguish this case from two others we have located. In *Grames v King,* 123 Mich App 573, 577; 332 NW2d 615 (1983), aff'd in part and vacated in part 422 Mich 887 (1985), a failure to properly supervise activities in a school locker room was involved rather than a defective or dangerous condition in a building itself. In *Landry v Detroit,* 143 Mich App 16, 22; 371 NW2d 466 (1985), lv gtd 424 Mich 876 (1986), the plaintiffs were attacked with a knife by a defendant in Detroit Recorder's Court. The allegations of a defective or dangerous condition stemmed not from a condition of the building but from the activities or operations conducted within the building, which was being used as a courtroom in the manner it was intended to be used.

Any analysis of this case must take into account that the lock and the chain were parts of the building and were placed on the door for the specific purpose of protecting sleeping female employees or students in a mental health facility. The widespread availability of keys made the lock a dangerous lock and the weakness of the chain made it a dangerous chain. They were in place for purposes of security, but they were inherently insecure.

The defendant next argues that it had no actual or constructive notice of the condition. The Court of Claims found that MHC knew of the numerous keys which could be used to open the door, and that MHC knew or should have known that the chain lock was not reasonably secure. We find no error in these findings. The widespread circulation of keys was a longstanding condition. With regard to the chain lock, it can be inferred from the ease with which Green circumvented the chain that its installer could not reasonably have expected it to provide adequate security.

Finally, the defendant argues that the amount of the verdict was excessive and unsupported by the evidence. The Court of Claims found, after hearing plaintiff's testimony and observing her demeanor, that plaintiff suffered "overwhelming shame, humiliation, shock, fear and outrage as a result of Green's sexual assault," which damages persisted to the date of trial and would continue into the future. Plaintiff still worried about a recurrence and panicked when alone. Her husband, whom plaintiff married after the incident, did not work at night so he could be with plaintiff in the evening. The court found that plaintiff was concerned about having children because she was afraid of having to get up during the night to care for them. (The record reflects, however, that plain-

tiff has had a child.) Plaintiff testified that she could not live on the ground floor or in housing without security features. The court also found that plaintiff had lost the capacity to trust most men and was fearful of strangers. Plaintiff was afraid to jog, an activity she previously enjoyed. The court found that plaintiff had lost a "fundamental sense of personal security and well-being."

Recognizing the difficulty of compensating psychological injuries, which were nonetheless every bit as real as a physical loss, the court considered the range of damage awards upheld in other cases and concluded that $500,000 reasonably approximated plaintiff's damages. The court noted that no damages for wage loss or medical expenses were pled, proven, or awarded.

After reviewing the record, we cannot conclude that the Court of Claims' findings were clearly erroneous. Nothing in the record suggests that the court failed to reduce any award for future damages to its present value.

Affirmed.