SCHAFER v ETHRIDGE

Docket No. 82053. Submitted March 12, 1986, at Lansing. Decided
    March 26, 1987.

Linda K. Schafer, a mentally retarded person, while a resident of
    Oakdale Regional Center for Developmental Disabilities, a
    facility operated by the Department of Mental Health, became
    pregnant during the time she was being treated for an infection
    in a medical ward at Oakdale serving both male and female
    residents. Deloris G. Schafer, as Linda K. Schafer's guardian
    and as next friend of the infant born to Linda, Toby Schafer,
    brought an action in circuit court against David A. Ethridge
    and others. Plaintiff also brought a tort action in the Court of
    Claims against the State of Michigan, the Department of Men-
    tal Health and Oakdale. The actions were consolidated for trial
    in the Court of Claims. The court, Martin E. Clements, J.,
    found no cause of action against the individual defendants, but
    found the defendant governmental agencies liable under the
    "public buildings" exception to governmental immunity and
    awarded plaintiff $282,000 in damages. Defendant governmen-
    tal agencies appealed.

    The Court of Appeals held:

    The defective and dangerous conditions alleged by plaintiff,
    in part involving unrestricted access to Linda K. Schafer,
    stemmed not from the condition of the building itself, but from
    the activities or operations conducted within the building.
    Thus, plaintiff's claim is not within the public buildings excep-
    tion to governmental immunity from tort liability.

    Reversed.

Governmental Immunity — Public Buildings.

    A claim under the "public buildings" exception to governmental
    immunity from tort liability is not stated where the defective
    or dangerous condition arises from activities or operations
    conducted within the building or where the injury is proxi-

References

Am Jur 2d, Municipal, School, and State Tort Liability §§ 150 et
    seq..
Comment Note.—Municipal immunity from liability for torts. 60
    ALR2d 1198.

mately caused by an intervening party (MCL 691.1406; MSA 3.996[106]).

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Paul Hines* and *Richard D. Toth*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *George L. McCargar* and *Mark S. Meadows,* Assistant Attorneys General, for defendants.

Before: MACKENZIE, P.J., and ALLEN and G. W. CROCKETT, III,* JJ.

MACKENZIE, P.J. Linda Kay Schafer suffers from profound mental retardation and has the mental equivalence of a child at age two or younger. Although she can make noises, she has no vocabulary. From 1964 through 1978, Linda was a resident of defendant Oakdale Regional Center for Developmental Disabilities, which is operated by defendant State of Michigan, Department of Mental Health. In late 1977, Linda, then twenty years old, developed an infection in her urinary tract. She was placed in a medical ward known as "2-West," where she remained from November 2, 1977, until December 16, 1977. During her stay in 2-West, Linda became pregnant. On August 11, 1978, Linda gave birth to a full-term baby, Toby Schafer. The identity of Toby's father is unknown.

2-West is a room approximately forty feet by forty feet in area, with a nursing station to the left of the ward's corridor entry. The nursing station is separated from the ward by a desk-high wall with a glass partition extending to the ceiling. In the center of the ward there are two fifteen to twenty-inch wide pillars placed about the same width

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

apart as the corridor. A three-foot-high wall runs from the right pillar to the right side wall. There are no curtains over this partition, but there are curtains running along each side of the corridor which could be drawn, and portable screens could be used to enclose a patient's bed. A door is located in about the middle of the wall opposite the nursing station opening into a stairway which leads to a clinic below and a pediatric and chronic care ward above. The stairway door is kept unlocked and can be opened at any time, although it is not used for normal traffic.

The ward was occupied by both male and female patients in November, 1977, with the male patients assigned to beds between the entrance to the ward and the half-wall partition, and the female patients assigned to beds on the opposite side of the partition. Linda's bed was located on the wall opposite the nursing station, near the stairwell. Seriously ill patients were assigned to beds directly in front of the nursing station. At night the overhead lights were turned off. The ward was illuminated by subdued nightlights at the base of the walls and desk lamps at the nursing station.

Plaintiff filed suit as guardian of Linda in the Court of Claims against the State of Michigan, Michigan State Department of Mental Health, and Oakdale Center. A second suit was filed against individual defendants and was consolidated with the Court of Claims action. Plaintiff sought damages for the assault of Linda Schafer, her pain and suffering during pregnancy and delivery, and the past and future costs of raising Toby Schafer. Various theories of liability were alleged against the defendants. Many of the claims were disposed of through settlement and pretrial motions. At the time of trial, plaintiff's remaining claims consisted

of a "defect in a building" and a nuisance claim against the state, and an intentional tort claim against the remaining individual defendants. Following bench trial, the trial judge found no cause of action against the individual defendants. The judge also found no cause of action against the State of Michigan predicated upon nuisance.

The Court of Claims, however, rendered a judgment against defendants State of Michigan, Michigan State Department of Mental Health, and Oakdale Center predicated upon the defective building exception to governmental immunity and awarded plaintiff $282,000 in damages. Defendants now appeal as of right. We reverse.

The court in this case concluded:

> Now, by inference, the court doesn't say that mixing the sexes in this ward is in and of itself a negligent act that would impose liability on the state but placing them together in this ward, given the pillars, the location of the nursing station, the lighting and the door near Linda Schafer, then I'm satisfied that the combination of them constitutes a defective building exception to governmental immunity.
>
> I don't think under the circumstances that the defendant can say that they did not or could not anticipate that this could happen. I think a reasonably intelligent person could anticipate that this could happen and I think the liability for supervision of people like this is greater than probably supervision for people who are not so severely retarded who can defend themselves and cry out for help.
>
> I find the State of Michigan liable for the assault upon Linda Schafer.

The "public buildings" exception to governmental immunity, MCL 691.1406; MSA 3.996(106), provides in part:

Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition.

By providing the public buildings exception to governmental immunity, the Legislature intended to protect the general public from injury by imposing upon governmental agencies the duty to maintain safe public places. *Pichette v Manistique Public Schools,* 403 Mich 268, 285; 269 NW2d 143 (1978). The determination of whether a part of a building is dangerous or defective is to be determined in light of the "uses or activities" for which it is "specifically assigned." *Bush v Oscoda Area Schools,* 405 Mich 716, 731; 275 NW2d 268 (1979). A building may be dangerous or defective because of improper design, faulty construction, or the absence of safety devices. *Bush, supra,* p 730. However, where the defective or dangerous condition arises from activities or operations conducted within the building and does not stem from the condition of the building itself, a claim is not stated within the public buildings exception. *Vargo v Svitchan,* 100 Mich App 809, 822-823; 301 NW2d 1 (1980), app dis 411 Mich 1035 (1982).

This Court has consistently held that injuries proximately caused by an intervening party do not arise from any defect in the building, but from a lack of supervision of persons within the building. Thus, in *Belmont v Forest Hills Public Schools,* 114 Mich App 692; 319 NW2d 386 (1982), lv den

422 Mich 891 (1985), where the plaintiff sustained an eye injury when struck by a chalk board eraser thrown across the room by another student, this Court found no defect in the building and affirmed dismissal of the action on summary judgment. Similarly, in *Grames v King,* 123 Mich App 573; 332 NW2d 615 (1983), vacated in part on other grounds 422 Mich 887 (1985), where the plaintiff was injured when she was assaulted in the locker room of a high school following a girls' basketball game, this Court rejected a claim for premises liability, noting that plaintiff's injuries stemmed not from a defective or dangerous condition in the building itself but from the failure to properly supervise activities conducted within the building.

In *Lowery v Dep't of Corrections,* 146 Mich App 342; 380 NW2d 99 (1985), lv den 425 Mich 870 (1986), this Court considered a claim analogous to that made by the plaintiff in the present case and stated:

> We also hold that plaintiff has failed to state a claim under the public building exception to governmental immunity. See MCL 691.1406; MSA 3.996(106). Although a prison constitutes a public building, *Green v Dep't of Corrections,* 366 Mich 459; 192 NW2d 491 (1971), the exception is generally limited to allegations of a "dangerous building by way of improper design, faulty construction or the absence of safety devices." *Hinds* [*v Dep't of Corrections,* 126 Mich App 99; 337 NW2d 1 (1982), lv den 422 Mich 902 (1985)], p 101, citing *Pichette v Manistique Public Schools,* 403 Mich 268; 269 NW2d 143 (1978); *Lockaby v Wayne County,* 406 Mich 65; 276 NW2d 1 (1979); *Bush v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979). The exception does not extend to allegations of (1) a failure to provide protection from, or adequate supervision of, other inmates, (2) failure to provide adequate staff and medical care, or (3) a failure to

properly classify plaintiff and/or remove him from the general prison population. See *Hinds, supra.* These allegations sound in negligence and do not constitute allegations of danger caused by the building itself. See *Vargo v Svitchan,* 100 Mich App 809; 301 NW2d 1 (1980), app dis 411 Mich 1035 (1982). [*Id.* at 358.]

In *Landry v Detroit,* 143 Mich App 16; 371 NW2d 466 (1985), lv gtd 424 Mich 876 (1986), the plaintiffs were injured when they were attacked in a Recorder's Court courtroom. Again, this Court held that the plaintiffs' injuries stemmed from activities or operations conducted within the building and not from the condition of the building itself. Finally, in *Vargo v Svitchan, supra,* where the plaintiff was injured when he fell while lifting barbells in a high school gymnasium, this Court stated:

[T]he plaintiffs in the case at bar, like the plaintiff in *Bush,* have alleged the existence of a dangerous condition on the basis of "fitness for intended use" and the absence of safety devices.

However, as the defendant school district notes, in the present case, unlike *Bush* and *Lockaby,* the complained-of room was being used as expected, as a gymnasium. Plaintiffs' argument that the gymnasium was dangerous because there was inadequate ventilation and consequent excessive perspiration (causing the barbells to slip) would possibly require a distorted interpretation of the statutory exception and the concept of "dangerous or defective." It is a common, and indeed unavoidable, experience that athletes perspire while in action. To allow the plaintiffs' claim in this regard would be to overextend the purpose and meaning of the statute. The plaintiffs' allegations fall more within the tenor of danger caused by the negligence (failure to exercise due care) of individual employees of the school district, rather than danger

caused by the building itself. It appears from the facts that the lack of supervision, not a defect in the building, was the cause of the plaintiff's injuries. Justice RYAN's reasoning in his dissent in *Bush, supra,* 738-739, is applicable to the case at bar:

"Although I find the majority approach appealing as a substantive rule of law, I am compelled to dissent because such a construction of the 'building' exception does not at all square with the manifest intent of the Legislature as expressed in the governmental immunity statute, MCL 691.1407; MSA 3.996(107).

* * *

"When construing an exception to a general rule, care must be taken not to derogate from the general rule to the extent that its intent and purpose is undermined. See *Grand Rapids Motor Coach Co v Public Service Commission,* 323 Mich 624, 634; 36 NW2d 299 (1949). Today's majority construes and applies the 'building' exception in a way which significantly undermines the intent of the general immunity provision by characterizing as a building defect what is actually the behavior of the school district's employees in utilizing a portion of the school building for a unique and highly specialized and always dangerous purpose, one for which it was not designed, constructed or intended to be used."

In the instant case, the plaintiffs' allegations concerning a defective or dangerous condition stem not from the condition of the building itself but from the activities or operations conducted within the building. To hold otherwise would expand the public building exception far beyond its purpose and intent and do violence to the will of the Legislature. [100 Mich App 822-823.]

In this case, as in the above cases, plaintiff's allegations concerning the defective and dangerous conditions of 2-West stem from the activities or operations conducted within the building. Plain-

tiff's proofs showed that the structural configuration of the ward allowed access to Linda. Access to a patient under medical care does not constitute a building defect, however; indeed, ready access to patients is critical in a hospital-type setting. The problem in this case is that access to Linda was not restricted by Oakdale Center personnel. The lack of due care in providing such restriction indicates a claim of improper supervision of patients, not a defective condition of the building itself. Simply put, the building did not cause Linda to become pregnant; rather, the act of an intervening party unchecked by Oakdale Center personnel did.[1]

Reversed.

---

[1] In accord with Administrative Order No. 1984-2, 418 Mich lxxxii, this Court has issued an order certifing a conflict between this decision and *Reardon v Dep't of Mental Health,* 157 Mich App 505; 403 NW2d 582 (1987).