HEMPHILL v STATE OF MICHIGAN

Docket No. 110073. Submitted July 11, 1988, at Lansing. Decided September 26, 1988. Leave to appeal applied for.

Plaintiff, Ella Hemphill, is the legal guardian of her son, Roy Adolphus, Jr., who has been declared mentally incompetent. On July 6, 1975, Adolphus was an inmate in a segregated prison cell of the State Prison of Southern Michigan, in a section reserved for inmates suffering from psychiatric problems. On that date, Adolphus attempted to attract attention by setting his bed sheet on fire. A polyurethane foam mattress in his cell ignited and Adolphus eventually suffered severe burns. Plaintiff thereafter brought an action in the Court of Claims against the state seeking damages. Plaintiff alleged that the defective building exception to governmental immunity applied. The Court of Claims, David S. DeWitt, J., concluded that the mattress in the cell constituted a building defect and, accordingly, that the state was not protected by governmental immunity. The court found the state negligent and entered a judgment of $250,000 for plaintiff. The state appealed and the Court of Appeals affirmed, unpublished opinion per curiam, decided January 25, 1988 (Docket No. 86308). The state sought leave to appeal to the Supreme Court which, in lieu of granting leave to appeal, remanded to the Court of Appeals for reconsideration in light of *Velmer v Baraga Area Schools,* 430 Mich 385 (1988), and *Reardon v Dep't of Mental Health* and *Schafer v Ethridge,* 430 Mich 398 (1988). 430 Mich 894 (1988).

The Court of Appeals, on remand, *held:*

1. The mattress involved here was not a fixture. The mattress was not a building defect.

2. The fire resulted as much from Adolphus' own act and the inadequate supervision of Adolphus as from a dangerous condition, thus, the public building exception to governmental immu-

REFERENCES

Am Jur 2d, Fixtures §§ 4 *et seq.*

Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 294 *et seq.*

Comment Note.—Municipal immunity from liability for torts. 60 ALR2d 1198.

nity does not apply. The state is immune from liability in the instant lawsuit.

Reversed.

1. GOVERNMENTAL IMMUNITY — PUBLIC BUILDINGS — FIXTURES.

A dangerous or defective condition of a fixture of a public building—without regard to whether it is actually attached or constructively attached by its weight—may support a claim of liability under the public building exception to governmental immunity (MCL 691.1406; MSA 3.996[106]).

2. GOVERNMENTAL IMMUNITY — PUBLIC BUILDINGS — FIXTURES.

The question whether an object is a fixture, for purposes of the defective building exception to governmental immunity, depends on the particular facts of each case and is to be determined by applying three factors: (1) annexation to the realty, either actual or constructive, (2) adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated, and (3) intention to make the article a permanent accession to the freehold; the controlling intention generally is that manifested by the annexing party by objective, visible facts (MCL 691.1406; MSA 3.996[106]).

*Becker & Van Cleef, P.C.* (by *Frank G. Becker*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Keith D. Roberts,* Assistant Attorney General, for defendant.

Before: BEASLEY, P.J., and GRIBBS and SHEPHERD, JJ.

PER CURIAM. We decide this case on order of the Supreme Court, which remanded it to us "for reconsideration in light of *Velmer v Baraga Area Schools,* 430 Mich 385 [424 NW2d 770] (1988), and *Reardon v Dep't of Mental Health* and *Schafer v Ethridge,* 430 Mich 398 [424 NW2d 248] (1988)".[1] In this Court's original opinion, the panel affirmed

[1] *Hemphill v Michigan,* 430 Mich 894 (1988).

a Court of Claims judgment in favor of plaintiff, Ella Hemphill.[2] Judge BEASLEY dissented, stating that the majority opinion rested on an unwarranted expansion of the defective building exception to the governmental immunity law.[3] After reviewing the facts and the cases cited in the Supreme Court remand order, we now reverse.

Plaintiff is the legal guardian of her son, Roy Adolphus, Jr., who has been declared mentally incompetent. On July 6, 1975, Adolphus was an inmate in a segregated prison cell of the State Prison of Southern Michigan, in a section reserved for inmates suffering from psychiatric problems. On that date, in an attempt to attract attention, Adolphus struck a match and set his bed sheet on fire. The burning sheet ignited a polyurethane foam mattress and the fire spread rapidly and uncontrollably within the small cell. Adolphus suffered severe burns before prison personnel pulled him from his cell. He sustained burns on thirty-six percent of his body and required extensive medical treatment, including four skin grafting operations. Adolphus still suffers from limited mobility and is permanently disfigured as a result of his injuries.

Plaintiff filed suit pursuant to the defective building exception to the governmental immunity statute. Evidence at trial established that prison officials had recommended that polyurethane mattresses not be used in the prison system, that the prison textile plant no longer manufactured polyurethane foam mattresses because they were a fire hazard, and that such mattresses were unsafe in settings where people were confined because of their propensity to burn quickly. Plaintiff testified

[2] *Hemphill v Michigan,* unpublished opinion per curiam of the Court of Appeals, decided January 25, 1988 (Docket No. 86308).

[3] MCL 691.1406; MSA 3.996(106).

that her son previously had attempted to set himself on fire while incarcerated in the state prison.

The Court of Claims concluded that the mattress in Adolphus' cell constituted a building defect and, accordingly, that defendant was not protected by governmental immunity. The court found defendant negligent and entered a judgment of $250,000 in favor of plaintiff.

In *Velmer v Baraga Area Schools, supra,* plaintiff was injured while working on a milling machine during a metal shop class at the public school. Plaintiff brought an action alleging safety deficiencies in the milling machine. The trial court granted summary disposition to defendant, holding that the machine was not part of the building and, therefore, that plaintiff's allegations did not fall within the public building exception to governmental immunity. This Court affirmed. On further appeal, the Supreme Court reversed, holding that "a dangerous or defective condition of a fixture—without regard to whether it is actually attached or constructively attached by its weight—may support a claim of liability under the public building exception to governmental immunity".[4] The Court stated:

> We have consistently held that items which are found to be fixtures are considered to be part of the realty to which they are connected. *Morris v Alexander,* 208 Mich 387; 175 NW 264 (1919); see also *Green [v Dep't of Corrections,* 30 Mich App 648, 655; 186 NW2d 792 (1971)]. The question whether an object is a fixture depends on the particular facts of each case, *Kent Storage Co v Grand Rapids Lumber Co,* 239 Mich 161, 164; 214 NW 111 (1927), and is to be determined by applying three factors:
> "[1] annexation to the realty, either actual or

4 *Velmer, supra* at 396.

constructive; [2] adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated; and [3] intention to make the article a permanent accession to the freehold." [*Peninsular Stove Co v Young,* 247 Mich 580, 582; 226 NW 225 (1929).]

In general, the controlling intention is that manifested by the annexing party by "objective, visible facts." *Michigan Nat'l Bank v City of Lansing,* 96 Mich App 551, 554; 293 NW2d 626 (1980), affirmed by an equally divided Court 414 Mich 851 (1982). [*Velmer, supra* at 394.]

Here, plaintiff alleged injuries caused by a defective mattress. We do not believe that the mattress amounted to a fixture. Accordingly, the mattress was not a building defect.

In *Reardon, supra,* plaintiff was sexually assaulted in her dormitory room at a state mental health center. The assailant apparently had used a duplicate master key to enter plaintiff's room. Plaintiff brought an action alleging that her room was unsafe because of the number of master keys in circulation among the center's employees. The trial court held that the public building exception applied, and this Court affirmed.[5]

In *Schafer v Ethridge, supra,* decided together with *Reardon,* the plaintiff's daughter was a profoundly mentally retarded resident of a state-operated center for developmental disabilities. While she temporarily was housed in a medical ward, the daughter was impregnated. She eventually gave birth to a son. Plaintiff brought an action against the state, claiming that her daughter became pregnant due to the dangerous and defective condition of the medical ward. Plaintiff argued that the layout of the ward, along with poor lighting and

[5] *Reardon v Dep't of Mental Health,* 157 Mich App 505; 403 NW2d 582 (1987).

the mixing of patients of both genders on the ward, combined to allow the sexual assault. The trial court agreed that the combination of factors created a dangerous or defective condition. This Court reversed, holding that the act of an intervening party unchecked by state personnel, not a defective building condition, caused the pregnancy.[6]

The Supreme Court reversed in *Reardon* and affirmed in *Schafer,* stating that "the Legislature intended to impose a duty to maintain safe public buildings, but not necessarily safety in public buildings".[7] In *Reardon,* the Court held that the existence of an excessive number of master keys was not a defective building condition.[8] In *Schafer,* the Court held that proper supervision would have offset any shortcomings in the configuration of the medical ward.[9]

Here, too, proper supervision may have prevented plaintiff's son's injuries. The polyurethane mattress would not have posed a significant danger were it not in a cell occupied by a prisoner with a history of attempting to set himself on fire. Similarly, the danger could have been diminished had prison officials somehow prevented the mentally incompetent Adolphus from gaining access to matches.

First, because the mattress was not a fixture and, second, because the fire resulted as much from Adolphus' own act and inadequate supervision as from a dangerous condition, we find that the public building exception to governmental immunity does not apply. Consequently, defendant is immune from liability in the instant lawsuit.

Reversed.

---

[6] *Schafer v Ethridge,* 158 Mich App 654; 405 NW2d 411 (1987).

[7] *Reardon, supra* at 417.

[8] *Id.* at 415.

[9] *Id.* at 417.